UNITED STATED DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INNOVATION VENTURES, LLC f/d/b/a
LIVING ESSENTIALS, a Michigan
limited liability company,

      Plaintiff,

vs.

CUSTOM NUTRITION LABORATORIES, LLC,
a Texas limited liability company,
NUTRITION SCIENCE LABORATORIES, LLC, a
Texas limited liability company,
and ALAN JONES,

      Defendants.

Case No. _____

Hon. _____

**MCDONALD HOPKINS, PLC**
James J. Giszczak (P46917)
Timothy J. Lowe (P68669)
Attorneys for Plaintiff
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
(248) 220-1354
jgiszczak@mcdonaldhopkins.com
tlowe@mcdonaldhopkins.com
Attorneys for Plaintiff

## COMPLAINT

Plaintiff, Innovation Ventures, LLC f/d/b/a Living Essentials ("Living Essentials"), by its attorneys, McDonald Hopkins, PLC, for its Complaint against Defendants, Custom Nutrition Laboratories, LLC ("CNL"), Nutrition Science Laboratories, LLC ("NSL") and Alan Jones ("Jones"), individually, states as follows:

{3953680:}
1

**Jurisdiction and Venue**

1. Plaintiff Living Essentials is a Michigan limited liability company with its principal place of business located in Farmington Hills, Michigan.

2. Defendant CNL is a Texas limited liability company with its principal place of business located at 2055 Luna Road, Suite 100, Carrolton, Texas, 75006.

3. Defendant NSL is a Texas limited liability company with its principal place of business located at 2055 Luna Road, Suite 100, Carrolton, Texas, 75006.

4. Defendant Alan Jones is an individual who resides in the State of Texas.

5. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of costs and interest.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b).

7. Personal jurisdiction is proper in the State of Michigan pursuant to MCL §§ 600.701(3), 600.705, 600.711(2), and 600.715. Defendants consented to the jurisdiction of this Court in the Confidential Settlement and Release Agreement ("Agreement"). **Exhibit A**, § 25.

**General Allegations**

8. Living Essentials is the manufacturer, marketer and distributor of the 5-hour Energy® liquid dietary supplement. Living Essentials distributes 5-hour Energy® throughout the United States.

9. Living Essentials has invested a great deal of time, effort and money to create an effective product. In great part, as a result of creating an effective formula for 5-hour Energy®, Living Essentials has created and maintains goodwill with consumers and its retailers/customers.

10. Living Essentials contracted with CNL in 2004 to manufacture and package 5-hour Energy®. At that time, Defendant Jones was the CEO of CNL.

11. As part of the contract between Living Essentials and CNL, CNL was privy to specific information concerning the formula used to manufacture 5-hour Energy®. This most confidential and proprietary information included its ingredients and the quantities of each.

12. In October 2007, the contract between Living Essentials and CNL was terminated. At that time a dispute arose between the parties.

13. A case was filed in Texas state court styled *Custom Nutrition Laboratories, LLC v. Innovation Ventures, LLC et. al.*, Case No. CC-07-14515-E; and a case filed in the United States District Court for the Eastern District of Texas, styled *Innovation Ventures, LLC v. Ultimate Lifestyles, LLC et. al.*, Civil Action No. 4:08-CV-232 (together, both lawsuits are referred to as the "Texas Litigation").

14. On or about August 17, 2009, Living Essentials, CNL, Jones personally, and other parties to the Texas Litigation resolved their dispute and executed the Agreement, which identified the parties' various rights and responsibilities under the Agreement. A redacted version of the Agreement is attached as **Exhibit A**.[1] A complete, unredacted version of the Agreement is, upon belief, in the possession of Defendants.[2]

15. To protect Living Essentials' goodwill, described above, it was material to Living Essentials that the Agreement include a restriction that Defendants agree, amongst other things, not to manufacture an energy shot containing certain Prohibited Ingredients, discussed below.

---

[1] The Agreement specifically provides for the limited disclosure of the Agreement and its terms to the extent necessary to enforce the terms and conditions of the Agreement. **Exhibit A**, § 25.
[2] Simultaneously with the filing of this Complaint, Living Essentials is filing its ex parte Motion to File Papers Under Seal, which will allow Living Essentials to file its Motion for Temporary Restraining Order and Preliminary Injunction and a complete unredacted copy of the Agreement under seal for the Court's review.

The Defendants breached that material provision and as a result, Living Essentials has been damaged.

16. In the Agreement Defendants agreed, among other things, to the following:

   a. CNL, Jones and their successors shall never, collectively, individually or in concert with others, directly or indirectly produce, manufacture, distribute, sell, or offer to sell 5-hour Energy®, the 5-hour Energy® formula (defined as the "Formula" in the Agreement) and/or any product containing the Formula. **Exhibit A**, § 1.

   b. CNL, Jones and their successors are prohibited from directly or indirectly manufacturing, formulating, assisting in the formulation, distributing, warehousing, storing, shipping, advertising, marketing, promoting, transferring, bartering, trading, donating, giving away, selling or offering to sell any Energy Liquid (as defined in the Agreement) that contains certain specified ingredients in all forms, and their derivatives, constituents, and synthetic equivalents or substitutes (the "Prohibited Ingredients").[3] The duration of this restriction is the same period of time a patent would provide protection to Living Essentials. **Exhibit A**, § 5(c)(i).

   c. CNL, Jones and their successors agreed to strictly maintain the confidentiality of all confidential information provided to them by Living Essentials, including but not limited to the Formula. **Exhibit A**, § 8(a).

---

[3] Because of the sensitive nature of the ingredients used to make 5-hour Energy®, Living Essentials will not specifically identify them in this pleading or the redacted version of the Agreement attached as Exhibit A. Living Essentials intends to file a detailed Motion for Temporary Restraining Order and Preliminary Injunction if the Court grants its request to file that motion under seal.

17.     Recently, Living Essentials discovered that NSL is manufacturing and distributing energy shots that contain the Prohibited Ingredients.

18.     Specifically, NSL is the manufacturer and distributor of The Energy Shot.

19.     The Energy Shot contains the Prohibited Ingredients.

20.     Upon information and belief, NSL also manufactures and distributes other energy shots that include the Prohibited Ingredients.

21.     It is rare for energy shots to contain certain of the Prohibited Ingredients.

22.     Living Essentials discovered Defendants' violation of the Agreement after a recent review of a product that was excluded from the Agreement.

23.     Specifically, the Agreement identified certain Existing Products that CNL was permitted to continue manufacturing. One of these products is "Rock On." **Exhibit A**, § 5(c)(ii), Exhibit D.

24.     Recently it was discovered that the Rock On energy shot is being manufactured and distributed by NSL, which also manufactures and distributes The Energy Shot.

25.     NSL's manufacture of The Energy Shot, which contains the Prohibited Ingredients, violates the Agreement.

26.     After learning this information, Living Essentials investigated NSL and discovered the connections between CNL, Jones and NSL.

27.     Upon information and belief, NSL became a successor, assign or subsidiary of CNL in October 2009, after the Agreement was executed.

28.     In fact, records from the Texas Secretary of State indicate that NSL was registered with that State on September 23, 2009, just one month after the Parties executed the Agreement.

29. According to Alan Jones' LinkedIn page, since October 2009 Jones has been the President of the Nutrition Division of Lily of the Desert, a division of LODC, Inc.  **Exhibit B**.

30. Upon information and belief, NSL is a subsidiary of LODC, Inc.

31. Upon information and belief Jones is also the president of NSL. **Exhibit C**.

32. CNL and NSL share the same address: 2055 Luna Road, Suite 100, Carrolton, Texas, 75006.

33. NSL, as successor to CNL and Jones, has manufactured and distributed The Energy Shot and, upon belief, other energy shots in violation of the Agreement.

34. Alternatively, if NSL is not a successor, subsidiary or assign of CNL and Jones, Jones and CNL, through NSL, have wrongfully used the confidential information known by them to manufacture energy shots, unfairly competing with Living Essentials.

35. Additionally, Jones has held himself out on his LinkedIn page as the "inventor and creator of the 2 oz energy shot supplement category.  5 Hour Energy was our signature creation in 2004 . . . ." in violation of the Agreement.  **Exhibit B**.

**<u>Count I –Breach of Contract</u>**
**<u>(Breach of Covenant Not to Use Prohibited Ingredients)</u>**

36. Living Essentials incorporates by reference the preceding paragraphs.

37. The Agreement is a valid and binding contract between Living Essentials and Defendants.

38. Defendants have breached the restrictive covenants found in the Agreement by manufacturing and distributing products, specifically The Energy Shot, which contain the Prohibited Ingredients.

39. As a result of Defendants' breach of the Agreement, Living Essentials has suffered irreparable injury, and there is immediate and imminent danger that Living Essentials will continue to suffer irreparable injury for which there is no adequate remedy at law.

40. Living Essentials is entitled to temporary, preliminary, and permanent injunctive relief against further breaches of the Agreement. Further, Living Essentials has suffered damages in excess of $75,000.00 as a direct result of these breaches which include, but are not limited to, lost profits and attorneys' fees.

### Count II – Breach of Contract
### (Breach of Covenant Not to Produce, Manufacture, Distribute, Sell or Offer to Sell the Formula or Any Product Containing the Formula)

41. Living Essentials incorporates by reference the preceding paragraphs.

42. The Agreement is a valid and binding contract between Living Essentials and Defendants.

43. Defendants breached the Agreement by directly or indirectly producing, manufacturing, distributing, selling, or offering to sell 5-hour Energy®, the Formula and/or any product containing the Formula, specifically by using the Formula to manufacture and distribute The Energy Shot.

44. As a result of Defendants' breach of the Agreement, Living Essentials has suffered irreparable injury, and there is immediate and imminent danger that Living Essentials will continue to suffer irreparable injury for which there is no adequate remedy at law.

45. Living Essentials is entitled to temporary, preliminary and permanent injunctive relief against further breaches of the Agreement. Further, Living Essentials has suffered damages in excess of $75,000.00 as a direct result of these breaches which include, but are not limited to, lost profits and attorneys' fees.

## Count III – Breach of Contract
### (Breach of Jones' Affirmation That Living Essentials Owns the Formula)

46. Living Essentials incorporates by reference the preceding paragraphs.

47. The Agreement is a valid and binding contract between Living Essentials and Jones.

48. Jones has breached the Agreement by holding himself out on his LinkedIn page as the "inventor and creator of the 2 oz energy shot supplement category. 5 Hour Energy was our signature creation in 2004 . . . ." in violation of the Agreement.  **Exhibit B**.

49. Living Essentials has been damaged by Jones' breach of Agreement because it has caused or will cause confusion in the market and loss of Living Essentials goodwill.

## Count IV – Unfair Competition

50. Living Essentials incorporates by reference the preceding paragraphs.

51. Defendants' conduct, including their use of Living Essentials confidential information, was an unfair and unethical trade practice that harmed Living Essentials and constitutes unfair competition.

52. As a result of Defendants' unfair competition, Defendants should be compelled to produce and return all confidential information of any kind pertaining to or containing information relative to Living Essentials, and Living Essentials is entitled to receive the profits of Defendants from the use of Living Essentials' confidential information and trade secrets, and other wrongdoing, and receive compensation for the damages Living Essentials has suffered as a result.

## Count V – Unjust Enrichment

53. Living Essentials incorporates by reference the preceding paragraphs.

54.  Defendants have received a benefit from Living Essentials from their use of Living Essentials' confidential information.

55.  Defendants have wrongfully benefited by their use of the Formula and Prohibited Ingredients.

56.  Defendants have not compensated Living Essentials for the benefit they have received.

57.  Under the circumstances, it would be inequitable for Defendants to accept or retain the benefit conferred on them by Living Essentials without paying Living Essentials the value of the benefit conferred.

<strong><u>PRAYER FOR RELIEF</u></strong>

**WHEREFORE**, Living Essentials requests:

A.  That this Court issue a Temporary Restraining Order and Preliminary and Permanent Injunction restraining and enjoining Defendants Custom Nutritional Laboratories, LLC, Nutrition Science Laboratories, LLC and Alan Jones, from directly or indirectly, manufacturing or distributing The Energy Shot, or any other Energy Liquid in violation of the Agreement.

B.  That this Court issue a Temporary Restraining Order and Preliminary and Permanent Injunction restraining and enjoining Defendants Custom Nutritional Laboratories, LLC, Nutrition Science Laboratories, LLC and Alan Jones, from directly or indirectly, using or disclosing any of Living Essentials confidential or proprietary information or property, which includes the Formula and Prohibited Ingredients, and ordering them to destroy all products in their possession that violate the Agreement.

C. That this Court issue a Temporary Restraining Order and Preliminary and Permanent Injunction requiring Defendant Alan Jones to cease and desist from making statements that violate the Agreement, including the statement on his LinkedIn page that he is the "inventor and creator of the 2 oz energy shot supplement category. 5 Hour Energy was our signature creation in 2004 . . . ."

D. That Defendants Custom Nutritional Laboratories, LLC, Nutrition Science Laboratories, LLC, and Alan Jones return all property of Living Essentials in their possession, custody or control, including all documents identified in § 15 of the Agreement, and all originals and copies of tangible property, proprietary documents, trade secrets, confidential information, discs, notes, client files, client information, employment information, business development information, request for proposal, request for bid, client correspondence, meeting minutes, notes of site visits, marketing data, prospect meeting data, proposals, faxes, financial information, pricing, contracts, marketing brochures, marketing database, marketing plans, costs, customer lists, customer information, internal weaknesses, prospect lists, client lists, employee lists, alliance relationships, competitive bid information, client contact lists, sales leads, prospective employee lists, business plans, profit, margin, and forecasting information, strategic planning, project costs, vendor information and contracts, distributors, ingredient suppliers, the formula and any other Living Essentials data whether kept in hard copy or electronic form.

E. That Living Essentials be granted, as relief, money damages, including exemplary and/or punitive damages, lost profits, all other appropriate damages, as well as all interest, costs, and disbursements of this action, including actual attorneys' fees and costs

as provided for by the Agreement and under any applicable statute, and such other relief as this Court may deem just and proper.

F.      All other appropriate legal and equitable relief that this Court deems proper and just.

                         Respectfully submitted,

                         **MCDONALD HOPKINS, PLC**

                         By:   /s/James J. Giszczak
                         James J. Giszczak (P46917)
                         Timothy J. Lowe (P68669)
                         Attorneys for Plaintiff
                         39533 Woodward Avenue, Suite 318
                         Bloomfield Hills, Michigan 48304
                         (248) 220-1354
                         jgiszczak@mcdonaldhopkins.com
                         tlowe@mcdonaldhopkins.com
Dated:  August 30, 2012                 Attorneys for Plaintiff

## JURY DEMAND

Plaintiff, Innovation Ventures, LLC f/d/b/a Living Essentials, by and through its attorneys, McDonald Hopkins PLC, hereby demands a trial by jury of the above cause. Respectfully submitted,

                         **MCDONALD HOPKINS, PLC**

                         By:   /s/James J. Giszczak
                         James J. Giszczak (P46917)
                         Timothy J. Lowe (P68669)
                         Attorneys for Plaintiff
                         39533 Woodward Avenue, Suite 318
                         Bloomfield Hills, Michigan 48304
                         (248) 220-1354
                         jgiszczak@mcdonaldhopkins.com
                         tlowe@mcdonaldhopkins.com
Dated:  August 30, 2012                 Attorneys for Plaintiff