## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

INNOVATION VENTURES, LLC, d/b/a
LIVING ESSENTIALS,

              Plaintiff,

   v.                                  Case No. 12-13850
                                        HON. TERRENCE G. BERG

CUSTOM NUTRITION LABORATORIES,
LLC, NUTRITION SCIENCE
LABORATORIES, LLC, and ALAN JONES,

              Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S
## RENEWED MOTION TO DISMISS (DKT. 78)

This case involves a dispute over the use of certain ingredients contained in the formula for the liquid dietary supplement 5-Hour Energy. Innovation Ventures, LLC, d/b/a Living Essentials ("Plaintiff") manufactures and distributes 5-Hour Energy throughout the United States. Plaintiff initially contracted with Defendant Custom Nutrition Laboratories, LLC ("CNL") to produce and package 5-Hour Energy. At that time, Defendant Alan Jones was CNL's CEO. This is not the first lawsuit between Plaintiff and Defendants CNL and Jones; as described in greater detail below, those parties previously sued each other in the Eastern District of Texas.

Defendant Nutrition Science Laboratories, LLC, ("NSL")—alleged to be a successor to the now-defunct CNL—currently manufactures and distributes competing energy shot products containing ingredients that Plaintiff claims are

prohibited under the terms of a settlement agreement resolving its prior litigation with CNL and Jones. That allegation is the heart of the current controversy.

Now pending before the Court is a renewed motion to dismiss for lack of personal jurisdiction and improper venue, filed by Defendant NSL. For the reasons set forth below, NSL's motion is DENIED.

## I.   PROCEDURAL HISTORY

Defendants NSL and Alan Jones initially moved to dismiss the complaint for lack of personal jurisdiction and improper venue on September 12, 2012 (Dkt. 16) and October 18, 2012 (Dkt. 30). Those motions were denied by Judge Friedman on December 7, 2012 (Dkt. 44). Following a January 2, 2013 hearing on Plaintiff's motion for a temporary restraining order, Judge Friedman permitted limited jurisdictional discovery and granted Defendants leave to file any additional motions to dismiss based on that discovery by February 19, 2013 (Dkt. 48). Defendant NSL timely filed a renewed motion to dismiss, but Defendant Jones did not. On March 11, 2013, this case was reassigned to this Court (Dkt. 87). NSL's renewed motion to dismiss has been fully briefed and the Court heard oral argument on April 12, 2013.

## II.   FACTUAL BACKGROUND

Plaintiff is the manufacturer, marketer, and distributor of 5-Hour Energy. (Dkt. 49, Am. Compl., ¶ 10). In 2004, Living Essentials contracted with Defendant CNL to produce and package 5-Hour Energy. At that time, Defendant Jones was the CEO of CNL. (*Id.* at ¶ 12). In 2007, the contract between the parties was terminated and litigation ensued in the Eastern District of Texas. (*Id.* at ¶¶ 14-15).

2

In 2009, Living Essentials, CNL, and Jones resolved their dispute and entered into a Settlement Agreement that contained certain restrictions, including that CNL and Jones would refrain from manufacturing or distributing any "Energy Liquid" product that contained any ingredient in the "Choline Family." (*Id*. at ¶¶ 16-19).

The Settlement Agreement between Living Essentials, CNL and Jones further provided, in section 16, that:

> [T]his Agreement shall be binding upon ... the Parties, their respective successors ... and anyone claiming by or through any one or more of them, *including, without limitation, any person or entity that acquires substantially all of their assets*. The provisions hereof shall survive any merger, acquisition, restructuring and/or reorganization, and the surviving entity shall be fully bound hereby.

(*Id*. at ¶ 28) (emphasis added). Within months of the execution of the Settlement Agreement, CNL and Defendant NSL entered into an Asset Purchase Agreement ("APA"), under which NSL acquired all or substantially all of CNL's assets. (*Id*. at ¶¶ 22, 29). Section 4.2 of the APA references the aforementioned Settlement Agreement, and, according to the terms of the APA, a copy of the Settlement Agreement was purportedly contained in Schedule 4.2(h) of the APA.[1] (*Id*. at ¶¶ 25-26). Shortly after acquiring CNL's assets, NSL began manufacturing an energy shot that contains an ingredient alleged by Plaintiff to be a member of the Choline Family. Also around this time Defendant Jones, the former CEO of CNL, became

---

[1] Section 4.2(r) of the APA reads, in pertinent part, as follows: "Notwithstanding the foregoing, (a) the "Rock On" trademark used by Sellers will be subject to a license agreement from the trademark owner that is currently being negotiated, pursuant to which Sellers will withdraw their conflicting trademark registration, and (b) the formula for energy drinks manufactured by Sellers and certain related trademark and copyright matters are limited by *the settlement agreement between Seller and Living Essentials and the related consent judgments contained in Schedule 4.2(h)*." (emphasis added).

3

the President of Lily of the Desert Nutrition, a company that shares common, close ownership with NSL and sells NSL's products.  (*Id*. at ¶ 37).

Living Essentials has now sued, claiming that Defendants have violated the Settlement Agreement by producing an Energy Liquid product containing an ingredient from the Choline Family.

### III.    ANALYSIS

**A.    Legal Standards**

*1)    Personal Jurisdiction*

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant.  *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002); *see also Children's Legal Services, PLLC v. Shor Levin and Derita, PC,* 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012).  "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Children's Legal Servs.*, 850 F. Supp. 2d at 679 (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)).  An evidentiary hearing may be conducted "if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution," in which case the Plaintiff would be required to "show by a preponderance of the evidence that jurisdiction exists."  *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1998).  However, where the district court finds no need for an evidentiary

4

hearing, as in the present case, "the burden of the plaintiff is relatively slight, and the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal." *Children's Legal Servs.*, 850 F. Supp. 2d at 679 (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (internal quotations and citations omitted)); *see also Nationwide Mutual Insurance Co. v. Tryg Int'l Insurance Co.***,** 91 F.3d 790, 792-93 (6th Cir. 1996) (quoting with approval *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 987 (6th Cir. 1992) (Boggs, J., dissenting) ("[A] showing by a preponderance of the evidence is not necessary unless the trial court conducts an evidentiary hearing.")); *Neogen Corp.*, 282 F.3d at 887.

Likewise, where a "district court rules on a jurisdictional motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(2) without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff," and in order to "'to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts,'" the court "'**does not weigh** the controverting assertions of the party seeking dismissal.'" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996) (emphasis in original) (quoting *Theunissen*, 935 F.2d at 1459). "Dismissal in this procedural posture is proper only if all the specific facts which [Plaintiff] alleges collectively fail to state a prima facie case for jurisdiction." *Id.*

**2)** *Venue*

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(3), a

defendant bears the burden of establishing that venue is improper. *Amphion Inc. v.*

*Buckeye Elec. Co.,* 285 F. Supp. 2d 943, 945 (E.D. Mich. 2003) (citing 17 James Wm.

Moore et al., *Moore's Federal Practice* ¶ 110.01 (3d ed. 1997)).  In a diversity action,

venue must be proper under 28 U.S.C. § 1391, which states:

> A civil action may be brought in—(1) a judicial district in which any
> defendant resides, if all defendants are residents of the State in which
> the district is located; (2) a judicial district in which a substantial part
> of the events or omissions giving rise to the claim occurred; or a
> substantial part of property that is the subject of the action is situated,
> or (3) if there is no district in which an action may otherwise be
> brought as provided in this section, any judicial district in which any
> defendant is subject to the court's personal jurisdiction with respect to
> such action.

28 U.S.C. § 1391(b).  Likewise, the Sixth Circuit has taken the position that

"whether a forum-selection clause should be enforced is a matter of contract, not an

issue of proper venue [under § 1391]." *Kerobo v. Sw. Clean Fuels, Corp.,* 285 F.3d

531, 535 (6th Cir. 2002); *see also Stewart Org. v. Ricoh Corp.,* 487 U.S. 22, 28 n.8

(1988) (suggesting venue is "improper" only where the statutory venue

requirements have not been met).  "Notwithstanding a forum selection clause, if the

venue is 'proper' under § 1391, a motion to dismiss for improper venue 'will not lie.'"

*Price v. PBG Hourly Pension Plan*, --- F. Supp. 2d ----, No. 12-15028, 2013 WL

450932, at *5 (E.D. Mich. Feb. 6, 2013) (citing *Kerobo,* 285 F.3d at 536).  Therefore,

even assuming for the sake of argument that the forum selection provision of the

Settlement Agreement is invalid, to prevail on its motion, Defendant would need to

6

"demonstrate that ... no substantial part of the events giving rise to [Plaintiff's] claim[s] occurred in the Eastern District of Michigan." *Cobsays, L.L.C. v. FMP Resistance Welding Supply, Inc.,* No. 07-13736, 2008 WL 162588, at *2 (E.D. Mich. Jan. 17, 2008). Moreover, the Sixth Circuit has previously interpreted the meaning of "substantial part" to "include[] any forum with a substantial connection to the plaintiff's claim." *First of Michigan Corp. v. Bramlet,* 141 F.3d 260, 263-64 (6th Cir. 1998).

## B.    Motion to Dismiss for Lack of Personal Jurisdiction

In a diversity case, as here, personal jurisdiction over a defendant is proper only if it comports with the requirements of the state long-arm statute and federal constitutional due process. *See Children's Legal Servs.*, 850 F. Supp. 2d at 679 (E.D. Mich. 2012); *see also* MCL §§ 600.711, 600.715. The Sixth Circuit has held that "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Children's Legal Servs.*, 850 F. Supp. 2d at 679 (quoting *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 327 F.3d 472, 477 (6th Cir. 2003)). "The Michigan Supreme Court has construed Michigan's Long-Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process." *Audi AG and Volkswagen of America, Inc. v. D'Amato,* 341 F. Supp. 2d 734, 741 (E.D. Mich. 2004). In Michigan, personal jurisdiction over a corporation may be general, *see* MCL § 600.711, or limited, *see* MCL § 600.715.

7

### 1)   *General Personal Jurisdiction*

A corporation is subject to general personal jurisdiction in Michigan if it is incorporated in Michigan, consents to jurisdiction, or engages in continuous and systematic business in Michigan.  MCL § 600.711.  Here, Plaintiff argues that Defendant NSL is subject to general jurisdiction because it has consented to jurisdiction via a provision in the Settlement Agreement.  Defendant NSL objects to general jurisdiction by asserting that it is neither a successor nor an assign of CNL, and thus the Settlement Agreement is not binding against it and cannot constitute a valid jurisdictional waiver.

In light of Plaintiff's limited burden, this Court agrees with Judge Friedman's December 7, 2012 Order (Dkt. 44) finding that Plaintiff has made a prima facie showing of general jurisdiction, based on the forum selection clause contained in the Settlement Agreement, which was incorporated by reference as part of the APA that Defendant NSL executed.  During oral argument, Defendant's counsel forcefully argued that, despite language in the APA stating that the Settlement Agreement was contained in Schedule 4.2(h) of the APA, Defendant NSL never actually received a copy of the Settlement Agreement.  (April 12, 2013 Hr'g Tr. at 7:2-24).  When the terms of a contract such as an asset purchase agreement state that other related documents—such as a settlement agreement—are incorporated by reference, *attached*, and binding, one would normally expect that the parties to the agreement and their counsel were aware of such related agreements, examined them, and exercised basic diligence to ensure that they were, in fact attached.  No

8

evidence has been adduced at this stage, however, to prove or disprove whether the Settlement Agreement containing the forum-selection clause was in fact provided to defendant NSL, as the APA states.[2]  The Court recognizes that, because no evidentiary hearing has been held, it should "**not weigh** the controverting assertions of the party seeking dismissal.'" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262-63 (6th Cir. 1996) (emphasis in original) (quoting *Theunissen*, 935 F.2d at 1459).  Giving defendant's assertions no weight, it is clear that the Settlement Agreement's forum selection clause would confer jurisdiction.  However, in deference to defense counsel's *contention* that NSL did not in fact receive a copy of the Settlement Agreement containing the forum selection clause, and considering the fairness concerns that would seem to arise from resting a finding of jurisdiction on a document that a party claims (however incredibly) not to have seen, the Court will also consider the independent question of whether the Court may exercise limited personal jurisdiction, regardless of whether the forum selection clause applies.

### 2)    *Limited Personal Jurisdiction*

The exercise of limited personal jurisdiction over an out-of-state defendant is proper where the defendant has "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)

---

[2] At this time, in light of the conclusion reached below on limited jurisdiction, the Court does not address the factual question of whether or not NSL actually received a copy of the Settlement Agreement.  *See Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).  Consequently, this opinion should not be construed as a determination of whether a party may be bound by a jurisdictional waiver contained in a document that was, in fact, never received.

(quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *accord Theunissen v. Matthews,* 935 F.2d 1454, 1459-61 (6th Cir. 1991).  Minimum-contacts are satisfied where a defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). "'Purposeful availment,' the 'constitutional touchstone' of personal jurisdiction, is present where the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.'" *Neogen*, 282 F.3d at 889 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (emphasis in original)).  The defendant's conduct must be such that he should reasonably anticipate being haled into court. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

Under Michigan law, certain conduct within the state will subject a corporation to limited personal jurisdiction, including transacting business within the state, committing a tort in the state, or entering into a contract for materials to be furnished in the state. *See* MCL § 600.715 (1), (2), and (5).  Here, Plaintiff contends that Defendant's actions are sufficient to subject it to limited personal jurisdiction under any of the above three categories.  Regardless of which category applies, however, the ultimate question for the Court is whether the exercise of jurisdiction comports with Due Process. *See Children's Legal Servs.*, 850 F. Supp. 2d at 679 (quoting *Bridgeport Music,* 327 F.3d at 477).

The Sixth Circuit has established a three-part test for determining when the Due Process clause has been satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th Cir. 1968). The Court will consider each element of the *Southern Machine* test individually.

### i)   *Purposeful Availment*

The Sixth Circuit has also stated that it "views the purposeful availment prong of the *Southern Machine* test as 'essential' to a finding of personal jurisdiction." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 722 (6th Cir. 2000)); *see also Children's Legal Servs.*, 850 F. Supp. 2d at 681.  But even so, a defendant need not have a physical presence in a state to be subjected to personal jurisdiction "so long as a commercial actor's efforts are 'purposefully directed' toward residents of another State." *Burger King,* 471 U.S. at 476.  This can occur where a party "seek[s] to serve" the citizens of the forum state. *World-Wide Volkswagen*, 444 U.S. at 295.  As such, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98.  Plaintiff relies on this stream of commerce theory to establish Defendant NSL's purposeful availment.

11

In the aftermath of *World-Wide Volkswagen*, the federal courts of appeal began to differ in their approach to applying the steam of commerce theory. *Compare, e.g.*, *Poyner v. Erma Werke Gmbh,* 618 F.2d 1186, 1190-1191 (6th Cir. 1980) (holding foreseeability based on stream of commerce was sufficient basis for jurisdiction); *Stabilisierungsfonds fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.,* 647 F.2d 200, 203 (D.C. Cir. 1981) (same); *Bean Dredging Corp. v. Dredge Technology Corp.,* 744 F.2d 1081 (5th Cir. 1984) (same); *Nelson v. Park Industries, Inc.,* 717 F.2d 1120, 1126 (7th Cir. 1983) (same); *Hedrick v. Daiko Shoji Co.,* 715 F.2d 1355 (9th Cir. 1983) (same); *and Fidelity & Casualty Co. of New York v. Philadelphia Resins Corp.,* 766 F.2d 440 (10th Cir. 1985) (endorsing stream of commerce theory but finding it inapplicable in instant case); *with DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280 (3rd Cir. 1981) (holding foreseeability based on stream of commerce alone was insufficient basis for personal jurisdiction); *Humble v. Toyota Motor Co., Ltd.,* 727 F.2d 709 (8th Cir. 1984) (same); *Dalmau Rodriguez v. Hughes Aircraft Co.,* 781 F.2d 9 (1st Cir. 1986) (same); *Chung v. NANA Development Corp.,* 783 F.2d 1124 (4th Cir. 1986) (same); *and Banton Industries, Inc. v. Dimatic Die & Tool Co.,* 801 F.2d 1283 (11th Cir. 1986) (same).

Consequently, the Supreme Court endeavored to provide additional guidance in *Asahi Metal Industry Co., Ltd. v. Superior Court of California***,** 480 U.S. 102 (1987).  The *Asahi* decision commanded only a plurality of Justices, however, and has itself split the Circuit Courts, with some favoring Justice Brennan's "stream of commerce" opinion, others embracing Justice O'Connor's "stream of commerce *plus*"

analysis, and still others declining to express a position.  *See, e.g.*, *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir. 1992) (adopting position consistent with Justice Brennan); *Ruston Gas Turbines, Inc. v. Donaldson Company,* 9 F.3d 415, 420 (5th Cir. 1993) (same); *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 614-15 (8th Cir. 1994) (same); *Boit v. Gar-Tec Products, Inc.,* 967 F.2d 671, 683 (1st Cir. 1992) (adopting position consistent with Justice O'Connor), *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994) (same); *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (same); *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1547 (11th Cir. 1993) (declining to adopt either position as controlling); *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (same); and *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 105 n.15 (3d Cir. 2009) (same).

The Sixth Circuit has explicitly adopted a preference for the "stream of commerce *plus*" theory, *see Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003),[3] and has, on more than one occasion, articulated its

---

[3] Although Defendant discussed *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780 (2011), at length, that decision has no precedential authority.  Also a plurality, *Nicastro* did not conclusively resolve the debate between the two main competing *Asahi* opinions, and thus the Sixth Circuit's preference for the "stream of commerce *plus*" opinion is controlling.  Although *Nicastro* lacks precedential effect, it is clear that the exercise of personal jurisdiction in this case would not be inconsistent with the approach adopted by its plurality:  Justice Kennedy's lead *Nicastro* opinion noted that under a pure "stream of commerce" approach (as advocated by Justice Brennan's opinion in *Asahi*), "[t]he owner of a small Florida farm might sell crops to a large nearby distributor, for example, who might then distribute them to grocers across the country.  If foreseeability were the controlling criterion, the farmer could be sued in Alaska or any number of other States' courts without ever leaving town."  *Nicastro*, 131 S.Ct. at 2790.  Here, Defendant could not rationally be compared to a small family farm with no control over the distribution channels for its crops— Defendant is a producer of various energy shots who has contracted with a major retailer and intentionally made use of that retailer's nation-wide distribution network, so as to cultivate a market for those products in as many of the retailer's stores as possible.  That is a significant factual

position as to when the "stream of commerce plus" test is satisfied, finding limited personal jurisdiction to exist where "defendant 'sought' nationwide distribution by contracting with a distributor for sales 'throughout the United States, its territories, commonwealth, possessions'" but not to exist where "defendant was 'merely aware' of the fact of national distribution, but the choice to distribute was 'pretty much out of [its] hands.'" *Palnik v. Westlake Entertainment, Inc.*, 344 Fed. Appx. 249, 251 (6th Cir. 2009) (citing *Bridgeport Music*, 327 F.3d at 480-83); *see also Tobin v. Astra Pharm. Prods., Inc.,* 993 F.2d 528, 544 (6th Cir. 1993) (recognizing that "'marketing the product through a distributor who has agreed to serve as the sales agent in the forum State' can 'indicate an intent or purpose to serve the market in the forum State'") (quoting *Asahi*, 480 U.S. at 122 (opinion of O'Connor, J.)).

Here, Plaintiff's amended complaint states, "NSL further is subject to this Court's jurisdiction because NSL carries on a continuous and systematic part of its business within the State of Michigan, and also transacts business within the State of Michigan out of which this lawsuit arises. Specifically, NSL manufactures energy shots that are sold to national retailers for resale in the retailers' outlets in the State of Michigan." (Dkt. 49, ¶ 9). The allegations of the complaint alone— especially when viewed in the light most favorable to Plaintiff—are sufficient to make a prima facie showing of purposeful availment under Sixth Circuit precedent. *See Palnik*, 344 Fed. Appx. at 252-54.

---

difference.   In addition, Justice Breyer's concurring opinion declined to adopt a broad rule and instead relied on prior precedent, providing no additional clarity.  *Id.* at 2791-92.

Although counsel for NSL rejected Plaintiff's assertion that a "distribution agreement" exists between Walgreens and NSL that specifies where NSL's products will be sold, an unsupported claim such as that will not defeat jurisdiction.[4]  Any agreement notwithstanding, counsel for Defendant NSL proffered, during Plaintiff's Rule 30(b)(6) deposition of NSL's President and CEO, that NSL supplies approximately 15,000 bottles of its "Rock On" energy shot per month to <u>each</u> of Walgreen's 17 regional distribution centers.  (Dkt. 90, Ex. C, Feb. 1, 2013 Dep. Tr. at 85:11-16).[5]  It was also stated during the deposition that one of those 17 distribution centers is in Perrysburg, Ohio, just south of the Michigan-Ohio border.  (*Id.* at 84:13-85:5).  The parties agree that there are 228 Walgreens stores in Michigan, and NSL admits that its product is sold in Walgreens' Michigan stores.  (*Id.* at 21:21-22:13).  Furthermore, all that commercial activity involving thousands of NSL's products relates only to Walgreens; during oral argument, counsel for NSL acknowledged there are between two and four additional national retail chains to which NSL supplies products, and each retailer has roughly ten to twenty locations

---

[4] During oral argument, Defendant's counsel stated that there was no "distribution agreement" between Walgreens and NSL, but that there is a "manufacturing agreement."  (April 12, 2013 Hr'g Tr. at 10:9-13; 12:10-12).  Counsel did not argue that this agreement was relevant to the question of jurisdiction, and the record is barren as to its terms.  Thus, while the Court affords no weight to any of Defendant's contrary assertions at this stage, *see CompuServe, Inc*, 89 F.3d at 1262-63, it is unclear—because its terms were never disclosed—whether the referenced "manufacturing agreement" between Defendant and Walgreens has any bearing on the issue of jurisdiction.

[5] The Court notes that although it would be preferable to cite to the sworn testimony of NSL's designated 30(b)(6) witness, the deposition transcript is replete with instances where counsel for NSL (Mr. Banowsky) provided significant factual information during the deposition, as opposed to allowing his client to testify.  For the purposes of this motion, because he presented relevant facts on behalf of his client, the Court will read all of Mr. Banowsky's substantive statements as if they had, in fact, been made by NSL's corporate representative.

operating in Michigan that sell those products.  (April 12, 2013 Hr'g Tr. at 14:3-
15:9).

Despite Defendant's unsubstantiated arguments that it did not avail itself of
the benefits of doing business in this forum, the facts adduced by Plaintiff support
the conclusion that NSL is knowingly and intentionally taking advantage of the
established distribution chains of multiple national retailers, for the purpose of
selling its products in as many stores as possible, including those in this district.  At
the very least, Defendant NSL provides *thousands* of bottles of its product to
Walgreens' Ohio distribution center every month with the knowledge that some not
insignificant portion of those products is being delivered to Walgreens' more than
200 Michigan stores to be purchased by Michigan consumers.[6]  As such, the
relationship between Defendant NSL and Walgreens is a significant, continuing,
and lucrative contact with Michigan, and based on that contact, the Court finds that
Defendant has purposefully availed itself of the privilege of doing business in
Michigan.  The first prong of the *Southern Machine* test is thus satisfied.

ii)    *Whether the Action Arises from Activities in Forum State*

Under the second prong of the *Southern Machine* test, the cause of action
must arise from the defendant's activities in the forum state.  Here, Plaintiff alleges
that Defendant is manufacturing and distributing, via Walgreens, a product

---

[6] The Northern District of Illinois recently found that the exercise of personal jurisdiction was
proper, under either stream of commerce theory, where a company made intentional use of national
retailers' distribution channels with the knowledge that those channels would likely bring the
product into the state.  In that case, the national retailers had a combined total of only 21 stores in
the state—ten times fewer than what is alleged here. *Original Creations, Inc. v. Ready America,
Inc.*, 836 F. Supp. 2d 711, 717 n.7 (N.D. Ill. 2011).

containing an ingredient that is prohibited by the Settlement Agreement. It is the sale of that same product in Michigan that supports the Court's finding of purposeful availment. Thus, the cause of action clearly arises from Defendant's contacts with the forum state. The first two prongs of the *Southern Machine* test are met.

### iii)   Reasonableness

If a court finds both that a plaintiff has established purposeful availment and that the cause of action arises from a defendant's contacts with the forum state, a court must then consider, under the third prong of the *Southern Machine* test, whether the exercise of personal jurisdiction is reasonable. However, "[i]f prongs one and two of *Southern Machine* test are satisfied, then there is an inference that the reasonableness prong is satisfied as well." *Intera Corp.,* 428 F.3d at 618. As explained above, such an inference may be drawn in this case, as both of the other prongs are easily met.[7]

Because Plaintiff has satisfied all three prongs of the *Southern Machine* test, the Court concludes that the exercise of limited personal jurisdiction in this case comports with the Due Process Clause of the Fourteenth Amendment.

---

[7] In the absence of such an inference, the Sixth Circuit has found that when courts determine the reasonableness of exercising personal jurisdiction over a defendant, they should weigh several factors, including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618. Although it is unnecessary to do so, the Court also finds that the exercise of jurisdiction is reasonable under this test because (1) the burden on Defendant, in light of its contacts with the forum, is not especially great, (2) the interest of the forum state is at least as great as that of Defendant's state; (3) Plaintiff has a strong interest in obtaining relief; and (4) the interests of other states in securing the most efficient resolution of the controversy would be served by exercising jurisdiction in this forum.

**C.     Motion to Dismiss for Improper Venue**

Defendant NSL also moved to dismiss the case for improper venue or, in the alternative, to transfer the case to the Northern District of Texas.[8]  Under 28 U.S.C. § 1391(b)(2), venue is proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  The "substantial part" standard does not require that a majority of the acts or omissions giving rise to a plaintiff's claims occur in the venue chosen by Plaintiff.  *First of Michigan Corp. v. Bramlet,* 141 F.3d 260, 263 (6th Cir. 1998).  "'[I]t is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere.'"  *Cobsays, L.L.C. v. FMP Resistance Welding Supply, Inc.,* No. 07-13736, 2008 WL 162588, at *2 (E.D. Mich. Jan. 17, 2008) (quoting *Amphion Inc. v. Buckeye Elec. Co.,* 285 F. Supp. 2d. 943, 946 (E.D. Mich. 2003)).  Here, a "substantial part" of the events giving rise to the claim—i.e., the sale of thousands of bottles of various energy shots, purportedly containing an ingredient Defendant promised not to use—are alleged to have occurred in the Eastern District of Michigan.  As such, venue is proper, and the motion to dismiss for improper venue is denied.

Defendant's alternative motion, under 28 U.S.C. § 1406(a), is similarly unavailing.  First, § 1406(a) applies only where "a case [is filed] laying venue *in the wrong division or district*."  (emphasis added).  As stated previously, venue lies

---

[8] The Court notes that even if transfer were appropriate, it is unclear why the Northern District of Texas would be the proper forum, as the prior litigation between certain of these parties occurred in the Eastern District of Texas.

properly in this district both because Plaintiff has already made a prima facie showing that the Settlement Agreement provides for venue in this district and because significant conduct giving rise to the claims occurred here.  Second, it appears likely that transfer to the Northern District of Texas would "result in an exchange of inconvenience from one party to the other."  *Kelly Services v. Eidnes*, 530 F. Supp. 2d 940, 949 (E.D. Mich. 2008) (citing *Superior Consulting v. Walling,* 851 F. Supp. 839, 845 (E.D. Mich. 1994)).  Accordingly, Defendant's alternative motion to transfer is also denied.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Renewed Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue (Dkt. 78) is **DENIED**.


Dated:  May 20, 2013                              s/Terrence G. Berg
                                                  TERRENCE G. BERG
                                                  UNITED STATES DISTRICT JUDGE


## Certificate of Service

I hereby certify that this Order was electronically submitted on May 20, 2013, using the CM/ECF system, which will send notification to all parties.

                                                  s/A. Chubb
                                                  Case Manager