# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

INNOVATION VENTURES, LLC, d/b/a
LIVING ESSENTIALS,

            Plaintiff,

v.

CUSTOM NUTRITION LABORATORIES,
LLC, NUTRITION SCIENCE
LABORATORIES, LLC, and ALAN JONES,

            Defendants.
_____/

Case No. 12-13850
HON. TERRENCE G. BERG

**OPINION AND ORDER:
(1) GRANTING DEFENDANTS' MOTION TO QUASH SUBPOENAS,
FOR A PROTECTIVE ORDER, AND FOR BIFURCATION (DKT. 67);
(2) DENYING PLAINTIFF'S MOTIONS TO COMPEL (DKTS. 90, 91, and 92);
AND (3) DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO
DISMISS AND FOR MORE DEFINITE STATEMENT (DKT. 74) AND
PLAINTIFF'S MOTION TO DISMISS (DKT. 79)**

Defendants Nutrition Science Laboratories, LLC, ("NSL") and Alan Jones filed a combined motion to quash subpoenas, for a protective order, and for bifurcation (Dkt. 67).[1] This combined motion has been fully briefed and the Court heard oral argument on April 12, 2013.

Plaintiff Innovation Ventures, LLC, ("Living Essentials") has filed motions to compel (1) testimony, (2) responses to interrogatories, and (3) responses to document requests (Dkts. 90, 91, and 92, respectively). Pursuant to Local Rule 7.1(f)(2), the Court will decide these motions without oral argument.

---

[1] This motion was previously referred to Magistrate Judge Hluchaniuk. In the interest of judicial economy and efficiency, this Court rescinded that order of reference on March 28, 2013 (Dkt. 106).

Defendants' motion to dismiss the amended complaint and for a more definite statement (Dkt. 74) and Plaintiff's motion to dismiss Defendants' amended counterclaims (Dkt. 79) will also be determined based on the parties' briefs. *See* E.D. Mich. LR 7.1(f)(2).

For the reasons set forth below, Defendants' combined motion to quash subpoenas, for a protective order, and for bifurcation is GRANTED, and Plaintiff's motions to compel are DENIED as moot. Moreover, because the bifurcation ordered below is likely to resolve the dispute between the parties, Defendants' motion to dismiss and for a more definite statement and Plaintiff's motion to dismiss are both DENIED WITHOUT PREJUDICE.

## I.     FACTUAL BACKGROUND

Plaintiff Living Essentials is the manufacturer, marketer, and distributor of 5-Hour Energy. (Dkt. 49, Am. Compl., ¶ 10). In 2004, Living Essentials contracted with Defendant Custom Nutrition Laboratories, LLC ("CNL") to produce and package 5-Hour Energy. At that time, Defendant Alan Jones was the CEO of CNL. (*Id*. at ¶ 12). In 2007, the contract between the parties was terminated and litigation ensued. (*Id*. at ¶¶ 14-15). In 2009, the parties resolved their dispute and entered into a Settlement Agreement that contained certain restrictions, including that CNL and Jones would refrain from manufacturing or distributing any "Energy Liquid" product, meaning "any energy shot, drink or other liquid (whether such liquid says it provides energy or not) of every kind," excluding certain meal replacement drinks, that contained anything in the "Choline Family," meaning

"citicoline, choline bitartrate, bilineurine, Beta-hydroxyethyl trimethylammonium hydroxide, choline chloride, choline citrate, cytidine 5-diphosphocholine (CDP-choline), intrachol, lipotropic factor, PhosCholxAE, phosphatidylcholine, TRI, tricholine citrate (TRI), trimethylethanolamine or their equivalents in all forms, derivatives, constituents, and synthetic equivalents or substitutes," excluding taurine. (*Id.* at ¶¶ 16-19).

The Settlement Agreement further provided, "[T]his Agreement shall be binding upon … the Parties [and] their respective successors … including, without limitation, any person or entity that acquires substantially all of their assets. The provisions hereof shall survive any merger, acquisition, restructuring and/or reorganization, and the surviving entity shall be fully bound hereby." (*Id.* at ¶ 28). Within months of the execution of the Settlement Agreement, Defendant Nutrition Science Laboratories, LLC ("NSL") entered into an Asset Purchase Agreement ("APA") with CNL, whereby it acquired all or substantially all of CNL's assets. (*Id.* at ¶¶ 22, 29). The APA references the Settlement Agreement, and a copy of the Settlement Agreement was purportedly appended to the APA, as part of Schedule 4.2(h). (*Id.* at ¶¶ 25-26).

Shortly after acquiring CNL's assets, NSL began manufacturing an energy shot that contains betaine, an ingredient alleged by Living Essentials to be a member of the Choline Family. (*Id.* at ¶ 30). Defendants assert that betaine is not a choline derivative and therefore not a member of the Choline Family.

3

Living Essentials has now sued Defendants, claiming that the production of an energy shot containing betaine violates the terms of the Settlement Agreement.

## II. ANALYSIS

### A. Motion to Bifurcate

Defendants move to bifurcate this case, stating in part: "If the court finds that the chemistry in the NSL products is sufficiently different, then there is no liability *without even considering the question of whether the terms of the Settlement Agreement between Plaintiff and Custom Nutrition Laboratories can be enforced* against [an] independent company which purchased assets in a transaction that originated and was consummated solely in Texas." (Dkt. 67, ¶ 14) (emphasis added). During the hearing on this motion, Defendants' counsel stated, "in fact, if the Court determines that the ingredients that are used in the product manufactured by my client is not the same as the product manufactured by Five Hour, then that ends the case. And it is really that simple." (April 12, 2013 Hr'g Tr. at 55:15-19). Although Plaintiff opposes bifurcation, Plaintiff's counsel admitted at the hearing that the key issue in this case is whether the Defendants are using an ingredient that they agreed not to use. (*Id*. at 48:8-9).

Federal Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial on one or more separate issues." Fed. R. Civ. P 42(b). Moreover, "[i]f a single issue could be dispositive of the case or is likely to lead the parties to negotiate a settlement, and resolution of it might make it unnecessary to try the other issues in the litigation,

4

separate trial of that issue may be desirable to save the time of the court and reduce the expenses of the parties." 9A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2388 (3d ed. 2013). "Whether resolution of a single issue would likely dispose of an entire claim is extremely relevant in determining the usefulness of a separate trial on the issue. This procedure should be encouraged because court time and litigation expenses are minimized." *Yung v. Raymark Industries*, 789 F.2d 397, 401 (6th Cir. 1986) (citations omitted).

The decision of whether to bifurcate, and how to bifurcate, is within the court's sound discretion. The Sixth Circuit has held that "'Rule 42(b) is sweeping in its terms and allows the court, in its discretion, to grant a separate trial of any kind of issue in any kind of case.' It follows, therefore, that a decision to try an issue separately will be affirmed unless the potential for prejudice to the parties is such as to clearly demonstrate an abuse of discretion." *In re Bendectin Litig.*, 857 F.2d 290, 308 (6th Cir. 1988); *see also In re Beverly Hills Fire Litigation*, 695 F.2d 207, 216 (6th Cir. 1982) (approving bifurcation of causation issue and making analogy to traditional liability/damages bifurcation); *Beeck v. Aquaslide 'N' Dive, Corp.*, 562 F.2d 537 (8th Cir. 1977) (approving limited trial on issue of whether defendant had manufactured product).

At the root of the present controversy is the question of whether any of NLS's Energy Liquid products contain an allegedly prohibited ingredient from the Choline Family. A conclusive answer to that question will largely resolve the dispute

5

between the parties. Therefore, a separate trial on this issue serves the interest of judicial economy and efficiency, and will be ordered.

The parties are directed to submit a joint discovery plan on this issue by May 31, 2013. The Court will then hold a scheduling conference for the purpose of establishing an accelerated trial date.

**B.      Motion to Quash or for Protective Order**

Defendants move to quash certain third-party subpoenas issued by Plaintiff, or, in the alternative, for a protective order. The Court's decision on Defendants' motion for bifurcation, above, significantly narrows the relevant scope of discovery. Accordingly, discovery will be limited to the issue of whether Defendant NSL's Energy Liquid products contain any ingredients in the Choline Family. *See* Fed. R. Civ. P. 26(c)(1)(D). Further, as this is a factual determination that will be significantly informed by the testimony of experts, it is the Court's expectation that sufficient information to determine the chemical composition of the allegedly infringing products will be *timely* disclosed pursuant to the terms of the protective order that was entered by Magistrate Judge Hluchaniuk on April 26, 2013 (Dkt. 109).

The Court will endeavor to make itself available to assist the parties in resolving any legitimate discovery disputes that may arise. The parties are otherwise encouraged to work together to complete discovery on this issue in an efficient and expeditious manner.

6

Moreover, the retailers who sell products manufactured by NSL are unlikely to possess any records or other information related to the chemical composition of those products. Considering this fact, coupled with Defendants' concerns regarding the collateral consequences of third-party discovery, the Court finds good cause to grant Defendants' motion for a protective order. In the future, discovery of documentary evidence in the possession of Defendants should be sought, in the first instance, from Defendants. *See* Fed. R. Civ. P. 26(c)(1)(C). Any currently-pending third-party subpoenas are effectively quashed.

**C.     Motions to Compel**

Plaintiff's motions to compel (1) testimony, (2) responses to interrogatories, and (3) responses to document requests, seek discovery on issues other than the chemical composition of Defendants' products. Because the presence or absence of any ingredient proven to be a member of the Choline Family in any of NSL's products is the only factual question on which discovery may be taken at this stage, Plaintiff's motions to compel (1) testimony, (2) responses to interrogatories, and (3) responses to document requests are moot and will be denied.

**D.     Motions to Dismiss**

The parties have represented to the Court that their dispute can be almost completely resolved by a determination of whether Defendant NSL's Energy Liquid products contain any ingredients in the Choline Family. Because of those representations, Defendants' motion to dismiss the amended complaint and for a

more definite statement and Plaintiff's motion to dismiss Defendants' amended counterclaims are moot and will be denied.

If, after the completion of trial on the bifurcated issue, the parties conclude that it is in their best interest to further litigate this matter, then they may re-file their motions to dismiss at that time and the Court will consider them on an expedited schedule.

### III.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Quash Subpoenas or for Protective Order, and for Bifurcation (Dkt. 67) is **GRANTED**, as follows:

1) Pursuant to Federal Rule of Civil Procedure 42(b), a separate trial is ordered on the issue of whether Defendant NSL's Energy Liquid products contain any ingredients in the Choline Family.

2) The Court supplements the protective order in this case to impose the following limitations on discovery:

    a. Discovery may be taken only on the issue of whether Defendant NSL's Energy Liquid products contain any ingredients in the Choline Family.

    b. Discovery of documentary evidence in the possession of Defendants should be sought, in the first instance, from Defendants.

Further, the parties are **ORDERED** to submit a joint plan governing discovery on this issue by May 31, 2013, pursuant to which discovery must be completed by August 19, 2013.


Finally, Defendants' Motion to Dismiss Amended Complaint and for More Definite Statement (Dkt. 74) and Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims (Dkt. 79) are both **DENIED WITHOUT PREJUDICE**.

Dated: May 20, 2013    s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on May 20, 2013, using the CM/ECF system, which will send notification to all parties.

s/A. Chubb
Case Manager