# UNITED STATED DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

INNOVATION VENTURES, LLC f/d/b/a
LIVING ESSENTIALS, a Michigan
limited liability company,

       Plaintiff/Counter-Defendant,

  v.

CUSTOM NUTRITION LABORATORIES, LLC,
a Texas limited liability company,

       Defendant,

  and

NUTRITION SCIENCE LABORATORIES, LLC, a
Texas limited liability company,
and ALAN JONES,

       Defendants/Counter-Plaintiffs.
_____/

Case No. 12-13850
Hon. Terrence G. Berg

## ORDER RESOLVING PENDING MOTIONS

This case involves a dispute between Plaintiff Innovation Ventures, LLC, f/d/b/a Living Essentials ("Plaintiff"), the maker and distributor of the liquid energy drink "5-Hour Energy" and Defendants, competitors of Plaintiff, over whether Defendants are using certain ingredients in their energy drinks that they had allegedly agreed not to use.

Plaintiff manufactures and distributes 5-Hour Energy throughout the United States. Plaintiff initially contracted with Defendant Custom Nutrition

Laboratories, LLC ("CNL") to produce and package 5-Hour Energy. At that time, Defendant Alan Jones ("Jones") was CNL's Chief Executive Officer. This is not the first lawsuit between Plaintiff and Defendants CNL and Jones; they previously sued each other in the Eastern District of Texas, and reached a settlement agreement in that case which Plaintiff now claims Defendants are breaching.

Specifically, Defendant Nutrition Science Laboratories, LLC ("NSL") – alleged by Plaintiff to be a successor to the now-defunct CNL – currently manufactures and distributes competing energy drinks containing ingredients that Plaintiff claims are prohibited under the terms the settlement agreement resolving the prior litigation between Plaintiff and Defendants CNL and Jones (the "Settlement Agreement") (Dkt. 135, Ex. 1).

Before the Court are seven motions: Defendants' amended motion for partial summary judgment (Dkt. 141 [initially Dkt. 132]); Plaintiff's motion for summary judgment (Dkts. 134 & 135); Defendants' motion to strike and exclude the expert opinions of Dr. Steven Zeisel (Dkt. 142); Plaintiff's motion to strike and exclude the expert opinions of Dr. J. Thomas Brenna and Alan Jones (Dkt. 149); Defendants' motion for leave to file motion for extension of time to file response (Dkt. 157); Defendants' motion in limine (Dkt. 168); and Plaintiff's motion for clarification and renewal of motion for summary judgment (Dkt. 174 [amended by Dkts. 176 & 177]).

As noted earlier, this lawsuit's core issue is whether Defendants, manufacturers of liquid energy drinks that compete with Plaintiff's product "5-hour Energy," are in breach of the Settlement Agreement previously reached between

Plaintiff and Defendants CNL and Jones that sought, among other things, to prevent the use of certain ingredients in Defendants' competing products. Defendants' motion for partial summary judgment is founded on the argument that two substances used by Defendants – "betaine" and "alpha GPC" – are not covered by the Settlement Agreement's prohibition (Dkt. 141).

Likewise, Plaintiff's motion for summary judgment maintains that those two substances *are* prohibited, and requests the Court to enter judgment that Defendants are liable for breaching the Settlement Agreement (Dkt. 134). Consistent with their diametrically opposed views of the breadth of the Settlement Agreement, both parties seek to strike and exclude the other side's expert opinions being offered to shed light on the Settlement Agreement's meaning (Dkts. 142, 149). In light of the centrality of this question, the Court sought to simplify the case by issuing an order bifurcating the proceedings into liability and damages phases on May 20, 2013 (Dkt. 111).

Unfortunately, as the parties' voluminous motion practice has revealed, neither side can agree on the meaning of the operative clause of that Settlement Agreement. The disagreement regarding the meaning of this clause undergirds the arguments in almost all of the pending motions. This disputed clause purports to list those ingredients which Defendants allegedly agreed not to use in energy drinks, and states in pertinent part:

> No Energy Liquid [sold by Defendants] shall contain anything in the Choline Family (defined below) . . .

3

> The term "Choline Family" means citicoline, choline bitartrate, bilineurine, Beta-hydroxyethyl, trimethylammonium hydroxide, choline chloride, choline citrate, cytidine 5-diphosphocholine (CDP-choline), intrachol, liptropic factor, PhosCholxAE, phosphatidylcholine, TRI, tricholine citrate (TRI), trimethylethanolamine *or their equivalents in all forms, derivatives, constituents, and synthetic equivalents or substitutes*; Taurine is excluded.

(Dkt. 135, Ex. 1, ¶ 5(c)(i)) (emphasis added to identify the "catch-all" phrase as discussed below). The fact that both parties have submitted hundreds of pages of briefs and exhibits in an attempt to explain why only their interpretation of these terms is correct demonstrates that neither side is entitled to summary judgment.

The terms listed in Settlement Agreement's definition of the "Choline Family" include both generic chemical compounds as well as the trade names of certain other compounds, some of which appear to be redundant. In addition to prohibiting the use of these specified substances, the Settlement Agreement also prohibits any energy liquid from containing "their equivalents in all forms, derivatives, constituents, and synthetic equivalents or substitutes." The intended scope and meaning of this "catch-all" phrase is unclear; it could be broadly interpreted to prohibit *anything* intended as a "substitute" for *anything* that could be proven to be a member of the "Choline Family," or it could be understood to target only substances falling within certain categories recognized as "equivalents in all their forms, derivatives, constituents, and synthetic equivalents or substitutes."

4

The catch-all terms in this clause are subject to myriad definitions, and the parties do not even agree as the relevant industry from which such definitions should be taken.

In one of the seven pending motions, Plaintiff seeks clarification of the Court's Order of January 23, 2014, in which the Court stated that the catch-all clause was ambiguous and set a date for an evidentiary hearing to receive testimony on its meaning (Dkt. 174). In order to provide clarification, the Court now **GRANTS** this motion and holds that the "catch-all" clause of paragraph 5(c)(i) of the Settlement Agreement[1] entered by and between Defendants CNL, Jones and Plaintiff in resolution of the previous litigation (*See* Dkt. 135, Ex. 1) is ambiguous as a matter of law.

Whether a contract's terms are ambiguous is a question of law for the Court to determine. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 818 (6th Cir. 1999). A contract is said to be ambiguous when its words may reasonably be understood in different ways. *See Farm Bureau v. Nikkel*, 460 Mich. 558, 596 N.W.2d 915, 919 (1999). If the Court finds no ambiguity, it should proceed to interpret the contract and may do so at the summary judgment stage. *See GenCorp*, 178 F.3d at 818. If the contract remains ambiguous, then the intent of the parties becomes a question of fact for a jury. *See Manley v. Plasti–Line, Inc.*, 808 F.2d 468, 471 (6th Cir. 1987) ("[D]isputed questions of contractual intent are considered factual issues which are precluded from summary resolution"); *Klapp v. United Ins.*

---

[1] The Court notes that Defendant NSL previously contended that the Settlement Agreement is not binding upon it (*see, e.g.,* Dkt. 31 at 8).

*Group Agency, Inc.*, 468 Mich. 459, 663 N.W.2d 447, 453–54 (2003) ("It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury").

Consequently, because the catch-all phrase is ambiguous, the question at the heart of the cross motions for summary judgment, whether the definition of the term "Choline Family" was intended to include the compounds "betaine" and "alpha-GPC," must be left to the jury.

To summarize the Court's Order:

Plaintiff's motion for clarification (Dkt. 174 [amended by Dkts. 176 & 177]) is **GRANTED**;

Defendants' amended motion for partial summary judgment (Dkt. 141 [initially Dkt. 132]) is **DENIED,** in light of the above ruling.

Plaintiff's motion for summary judgment (Dkts. 134 & 135 [renewed in Dkt. 174]) is **GRANTED IN PART**, because Defendants have admitted that their energy drink products previously contained choline bitartrate and choline citrate, substances expressly prohibited by name in the Settlement Agreement (*see* Dkt. 174, Ex. 2). Plaintiff's motion for summary judgment is **DENIED** in all other respects.

However, as stated in footnote one, above, the question of whether the Settlement Agreement is binding upon Defendant NSL remains to be addressed. That question may now be considered: Defendant NSL is granted leave to file a motion for summary judgment focusing on the question whether the Settlement

6

Agreement is binding upon it within fourteen (14) days of the date of this Order, with response and reply deadlines following the time set forth in E.D. Mich. LR 7.1(e). If Defendant NSL chooses not to file such a summary judgment motion, then the Court will set this matter for a jury trial.

Other than the above-referenced motion for summary judgment, no further motions of any kind may be filed by either party without obtaining leave of Court after the grounds for such motion have been discussed with and approved by the Court in a status conference.

Further, Defendants' motion to strike and exclude the expert opinions of Dr. Steven Zeisel (Dkt. 142) and Plaintiff's motion to strike and exclude the expert opinions of Dr. J. Thomas Brenna and Alan Jones (Dkt. 149) are both **DENIED WITHOUT PREJUDICE**;[2] Defendants' motion for leave to file (Dkt. 157) is **GRANTED**;[3] and Defendants' motion in limine (Dkt. 168) is **DENIED AS MOOT**.[4]

Finally, the Court directs counsel to consider that this controversy is ultimately just an argument over the meaning of a poorly drafted contract. It remains firmly within the parties' control to re-negotiate the terms of the

---

[2] The Court will revisit the propriety of these expert opinions, if necessary, if they are challenged through motions in limine, filed in advance of the jury trial in accordance with a briefing schedule that the Court will issue.

[3] The Court notes that this motion was allegedly necessitated by counsel for Plaintiff's unwillingness to grant opposing counsel a one-day extension to file a response. When counsel are unable to agree to short extensions of time to file responses, it is evidence of how far they have strayed from the professionalism that this Court expects, and indeed from the bounds of common courtesy. Both parties are encouraged to read and practice the civility principles adopted by the United States District Court for the Eastern District of Michigan, specifically the section detailing Attorney's Responsibilities to Other Counsel.

[4] As the Court anticipates that the "sword and shield" privilege issues raised in this motion are likely to be raised again in the context of trial, the Court strongly encourages the parties to re-evaluate their positions on this question and work together on resolving these issues among themselves.

7

Settlement Agreement and thereby avoid the enormous amount of attorney time and colossal costs of continuing this litigation.

      **SO ORDERED.**

Dated:  September 29, 2014                 s/Terrence G. Berg
                                                          TERRENCE G. BERG
                                                          UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically submitted on September 29, 2014, using the CM/ECF system, which will send notification to each party.

                                                     s/A. Chubb
                                                     Case Manager