# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| INNOVATION VENTURES, L.L.C. f/d/b/a/ LIVING ESSENTIALS,<br><br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>CUSTOM NUTRITION LABORATORIES, L.L.C.,<br><br>    Defendant,<br><br>and<br><br>NUTRITION SCIENCE LABORATORIES, LLC, and ALAN JONES,<br><br>    Defendants/Counter-Plaintiffs. | Case No. 12-13850<br>Hon. Terrence G. Berg |

**ORDER GRANTING PLAINTIFF'S MOTION (DKT. 317) TO DISMISS DEFENDANT NSL'S AND DEFENDANT JONES'S COUNTERCLAIMS (DKTS. 188 & 189)**

## I. INTRODUCTION

This is breach of contract case that involves the liquid energy supplement 5-hour ENERGY®. Plaintiff Innovation Ventures, the manufacturer of 5-hour ENERGY®, alleges that, among other things, Defendants Custom Nutrition Laboratories ("CNL"), Nutrition Science Laboratories ("NSL"), and Alan Jones breached an agreement with Plaintiff not to produce energy shots containing ingredients from the Choline Family. Defendants NSL and Jones have asserted counterclaims alleging that Plaintiff has violated federal antitrust laws; that Plaintiff's formula is not confidential; that the restrictive covenant in the agreement Defendants allegedly

breached is an illegal restraint on trade; and that Plaintiff is wrongly attempting to hold NSL liable for CNL's obligations. Plaintiff has moved to dismiss NSL's and Jones's counterclaims. NSL and Jones oppose the motion. For the reasons below, Plaintiff's motion is **GRANTED** and the counterclaims are **DISMISSED**.

## II. BACKGROUND

The parties have a long and acrimonious history that need not be recounted in detail here. It is enough to note that Plaintiff makes 5 Hour Energy, Dkt. 219, Pg. ID 9,179, and CNL is a Texas company that Plaintiff hired to produce its energy shot. Dkt. 219, Pg. ID 9,180. Defendants NSL and Jones assert in their counterclaims that Defendant CNL developed the first formula that Plaintiff used for the shot. They make a number of other counter-allegations as well, including that Plaintiff allegedly:

- Obtained the original formula by falsely claiming it needed the formula for insurance purposes;
- Claimed that it owned the formula;
- Signed a contract with CNL for the long-term production of the shot;
- Went behind CNL's back and found another supplier;
- Sent a representative to CNL's production facility to learn CNL's production process;
- Gave CNL's formula to the other supplier;
- Told the other supplier how CNL produced the shot;
- Placed several large orders with CNL;
- Caused CNL to create a large inventory;
- Terminated its contract with CNL;
- Refused to pay for the inventory CNL had produced (which meant CNL was left with almost no money because it had spent most of it producing the inventory);
- Forced CNL to go to court in Texas to attempt to recover its money;

- Ran up litigation costs to the point that CNL was near bankruptcy; and
- Forced CNL to settle the lawsuit in August of 2009 on terms favorable to Plaintiff.

Dkt. 188, Pg. IDs 6,834-6,862.

Part of the Settlement Agreement prohibited CNL from producing any energy shots that contained ingredients falling within the agreement's definition of the "Choline Family." Dkt. 219, Pg. ID 9,181.

After settling the litigation in Texas, CNL still found itself in financial trouble, so in October of 2009 it entered into an Asset Purchase Agreement with NSL. Dkt. 219, Pg. ID 9,187. The Asset Purchase Agreement incorporated by reference the Settlement Agreement's Choline Family restriction. Dkt. 219, Pg. ID 9,216.

NSL allegedly then began making energy shots containing ingredients Plaintiff believed were in the Choline Family. Dkt. 187, Pg. IDs 6,705-6,706. So Plaintiff filed this lawsuit alleging, among other things, that CNL, NSL and Jones[1] breached the Settlement Agreement. Dkt. 1.

The case has now been through Defendants' motions to dismiss (Dkts. 16, 30, 74, and 78), Defendants' motion for summary judgment (Dkt. 199), and a bifurcated jury trial (Dkts. 111, 301-308) on whether betaine and alpha GPC are members of the

---

[1] Jones was CNL's President and Chief Executive Officer at the time CNL settled the Texas litigation with Plaintiff. Dkt. 304, Pg. ID 13,694. Jones went on to serve as President of NSL, Dkt. 304, Pg. ID 13,699, and as President for Lily of the Desert (an entity Plaintiff claims is the alter ego of NSL, but which is not a party to this lawsuit). Dkt. 304, Pg. ID 13,697.

Choline Family. The jury found in the affirmative on this question: betaine and alpha GPC are members of the Choline Family. (Dkt. 296). Plaintiff has filed an amended complaint (Dkt. 58) and a second amended complaint (Dkt. 187), and has asked to file a third amended complaint (Dkt. 224) (the Court denied that motion because Plaintiff waited too long after discovering new information to seek to amend its claims a third time (Dkt. 233)). NSL and Jones have also filed counterclaims, which are now in their third iteration. Dkts. 188, 189. Plaintiff moves to dismiss these counterclaims. Dkt. 317. NSL and Jones oppose the motion. Dkt. 318. Having reviewed the briefs, the Court finds that oral argument would not assist the Court in resolving Plaintiff's motion.

### III.  STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court reasonably to infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556). When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *See Ziegler v IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). A plaintiff must provide "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*,

4

550 U.S. at 556. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV. ANALYSIS

NSL's counterclaims are best divided into three categories: (1) an antitrust counterclaim (Count I); (2) counterclaims seeking declarations relating to Plaintiff's formula (Counts II-V); and (3) counterclaims seeking other declarations (Counts VI and VII). Jones's counterclaims (Counts I-IV) are identical to NSL's second category of counterclaims (seeking declarations relating to Plaintiff's formula). For the reasons enumerated below, Defendants' counterclaims are subject to dismissal.

### A. NSL's antitrust counterclaim is time barred

NSL's first counterclaim is really three counterclaims in one claiming that Plaintiff has violated federal antitrust laws. First, NSL alleges that Plaintiff's settlement agreement with CNL violates 15 U.S.C. § 1.[2] Second, NSL alleges that Plaintiff's conduct and specific intent to monopolize the United States market for the

---

[2] Section 1 of Title 15 of the United States Code provides:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

5

2-ounce energy shot violates 15 U.S.C. § 2.[3] And third, NSL alleges that Plaintiff's method of selling its products to retailers violates 15 U.S.C. § 14.[4]

Plaintiff offers a variety of arguments for why the Court should dismiss this counterclaim—five of them in total. Dkt. 317, Pg. IDs 14,867-14,883. Although many of Plaintiff's arguments have merit—the counterclaim borders on being purely conclusory and contains few if any allegations that demonstrate antitrust injury—the Court need only address the last: that the claim is time barred.

---

[3] Section 2 of Title 15 of the United States Code provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court.

[4] Section 14 of Title 15 of the United States Code provides:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

Plaintiff argues that Count I of NSL's Counterclaims is time barred because there is a four-year limitations period for antitrust claims and the Settlement Agreement between Plaintiff and CNL that purportedly violated antitrust law was reached in August of 2009, but NSL did not bring its antitrust counterclaim until October of 2014. Dkt. 317, Pg. IDs 14,882-14,883. NSL responds that Count I is "clearly not time barred" because it "clearly relates back to Count II of NSL's original counterclaim" (that the Settlement Agreement was an illegal restraint on trade). Dkt. 318, Pg. ID 15,135.

NSL offers no explanation for how a claim for specific federal antitrust violations can relate back to an alleged "illegal restraint on trade" claim that is so vague that it fails to identify whether it arises under state, federal, common, or statutory law. Moreover, this same "illegal restraint of trade" claim appears in NSL's amended counterclaims as Count IV. Dkt. 188, Pg. IDs 6,868-6,869. So NSL is seeking to have its federal antitrust claims "relate back" to a claim that is being brought at the same time. NSL offers no legal justification for this position; it does not invoke the Rule of Civil Procedure that governs relation back in this context, which states that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). NSL's relation-back argument therefore fails as a threshold matter because NSL offers no legal support for its position. And even if NSL had cited the

relevant legal authority—under the Federal Rules of Civil Procedure and Sixth Circuit case law—NSL's argument would fail on the merits.

Whether NSL's antitrust claim relates back to its claim for a declaratory judgment stating that the settlement agreement was an illegal restraint on trade depends on whether Plaintiff "had been placed on notice that [it] could be called to answer for the allegations in the amended pleading." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 516 (6th Cir. 2007). In other words, the Court must ask whether Count III in NSL's initial counterclaims put Plaintiff on notice that NSL might later allege federal antitrust violations. The answer is "no"; Count III does not state what law renders the agreement illegal, but the content of NSL's allegations makes it clear.

A broad and unqualified reference to the term "illegal restraint on trade" could be understood to raise claims under the federal Sherman and Clayton Antitrust Acts, Mich. Comp. Laws § 445.772, or Mich. Comp. Laws § 445.774(a)(1).[5] In Count III of NSL's original counterclaims, NSL alleged that there was a substantial controversy between it and Plaintiff that warranted "the issuance of a declaratory judgment regarding the legality and/or enforceability of the restrictive covenants in the settlement agreement." Dkt. 45, Pg. ID 743. Only one of the above-mentioned laws concerns restrictive covenants: Mich. Comp. Laws § 445.774(a)(1). So given the language of Count III, this claim would have reasonably put Plaintiff on notice of a claim under Mich. Comp. Laws § 445.774(a)(1), but not of federal antitrust claims.

---

[5] The Court mentions Michigan law because the settlement agreement's choice of law provision selected Michigan Law to govern the agreement. See Dkt. 219, Pg. ID 9,197.

NSL's response fails, and the Court finds that Count I is untimely. NSL's antitrust counterclaim is therefore **DISMISSED**.

**B. NSL and Jones lack standing to bring their counterclaims for declaratory judgments concerning the confidentiality of Plaintiff's formula**

NSL's second, third, fourth, and fifth counterclaims and Jones's counterclaims are identical. They ask for four declarations: (1) that the formulas disclosed in the applications for U.S. Patent No. 8,187,647 and U.S. Patent No. 8,632,834 are in the public domain; (2) that the formula Plaintiff actually uses (which Defendants believe is disclosed in Plaintiff's patent applications) is in the public domain; (3) that the formulas disclosed in the applications for U.S. Patent No. 8,187,647 and U.S. Patent No. 8,632,834 are not confidential; and (4) that the formula Plaintiff actually uses (which Defendants believe is disclosed in Plaintiff's patent applications) is not confidential. Dkt. 188, Pg. IDs 6,864-6,867; Dkt. 189.

As with NSL's antitrust claim, Plaintiff presents a bundle of arguments—this time eight arguments in total—in support of dismissing this set of counterclaims. But the Court need only address Plaintiff's argument that NSL and Jones lack standing to bring these claims.

Plaintiff argues that there is no controversy over its formula's confidentiality, meaning Defendants lack standing under 28 U.S.C. § 2201(a) to seek declaratory judgments relating to the formula's confidentiality. Dkt. 317, Pg. IDs 14,884-14,886. Defendants respond that "[w]hether the manufacture of energy shots with betaine, alpha GPC or any other ingredient in the 'Choline Family' constitutes a

9

misappropriation of [Plaintiff's] confidential information constituting unfair competition is a matter of continued dispute between the parties." Dkt. 318, Pg. ID 15,135. Plaintiff replies that it dismissed its claims for unfair competition and unjust enrichment long ago, so the question of the formula's confidentiality is no longer an issue. Dkt. 324, Pg. IDs 15,163-15,165.

Defendants lack standing to bring these claims because there is no actual controversy (as required by 28 U.S.C. § 2201(a)) over the confidentiality of Plaintiff's formula. To be sure, the confidentiality of Plaintiff's formula was initially at issue in this litigation; Plaintiff's original complaint included causes of action for unfair competition (Count IV) and unjust enrichment (Count V) based on Defendants' alleged use of Plaintiff's confidential information. Dkt. 1, Pg. IDs 8-9. But in its First Amended Complaint, Plaintiff dropped those claims. Dkt. 58. Plaintiff did not revive those claims in its Second Amended Complaint. Dkt. 187. And even Plaintiff's proposed Third Amended Complaint (which the Court denied Plaintiff leave to file) excluded those claims. Dkt. 224-2. Consequently, these counterclaims are **DISMISSED**.

### C. The Court's summary judgment order (Dkt. 219) resolved NSL's counterclaims for declaratory judgments concerning illegal restraint on trade and NSL's liability for CNL's obligations (Counts VI and VII)

NSL's final two counterclaims ask the Court to declare that the Settlement Agreement is an illegal restraint on trade (Count VI) and that NSL is not liable for CNL's obligations (Count VII). Dkt. 188, Pg. IDs 6,868-6,871. Plaintiff argues that the Court's summary judgment order (Dkt. 219) already resolved those claims.

10

Dkt. 317, Pg. ID 14,833. NSL responds that Plaintiff seeks dismissal of Count VI to avoid scrutiny of Plaintiff's "long history of anti-competitive activity," Dkt. 318, Pg. ID 15,117, and acknowledges that the Court "already determined that the restrictions in the Settlement Agreement are unreasonable as a matter of law," Dkt. 318, Pg. IDs 15,132, but offers no response specific to Plaintiff's argument.

Plaintiff is correct; the Court resolved these claims. See Dkt. 219.

In Count VI, NSL asks for "a judicial declaration that the provisions of the settlement agreement precluding the 'CNL Parties' from manufacturing 'Energy Liquids' containing ingredients from the 'Choline Family' are unreasonable and unenforceable." Dkt. 188, Pg. ID 6,869-6,870. The Court has already held that the Choline family restriction's duration was too long and therefore was unenforceable pursuant to Mich. Comp. Laws § 445.774(a)(1). Dkt. 219, Pg. IDs 9,234-9,326. The Court even reformed the restriction's duration so that it complies with Michigan law. Dkt. 219, Pg. IDs 9,236-9,327. Thus the Court has resolved this claim.

In Count VII, NSL asks for "a judicial declaration that the asset purchase agreement is governed by Texas law, and that as a result of entering into the asset purchase agreement NSL did not become bound to any provisions of the settlement agreement between Living Essentials and CNL." The Court has already held that Texas law governs the Asset Purchase Agreement; that NSL is not a successor to CNL; but that NSL is bound to the Choline family restriction because the Asset Purchase Agreement incorporates the restriction by reference. Dkt. 219, Pg. IDs 9,198-9,203; 9,203-9,206; 9,216-9,223. Thus the Court has resolved this claim.

**D. Defendants counterclaims are dismissed with prejudice**

Defendants have asked for leave to amend their counterclaims. Dkt. 318, Pg. ID 15,144. The Court will deny this request for two reasons. First, such a request, when made within a responsive brief, is not sufficient to properly place the issue of amendment before the Court. *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000). And second, any amendment would be futile; nothing NSL could allege would change the untimeliness of its antitrust counterclaim or the fact that the Court has already resolved Counts VI and VII, and nothing either NSL or Jones could allege would create a controversy over the confidentiality of Plaintiff's formulas.

## V. CONCLUSION

In summary, NSL's and Jones's counterclaims were brought too late, concern issues over which there is no ongoing controversy, or already have been resolved. Defendants' amended counterclaims (Dkts. 188 and 189) are therefore **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Dated: April 6, 2017

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on April 6, 2017, using the CM/ECF system, which will send notification to all parties.

s/A. Chubb
Case Manager