# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

INNOVATION VENTURES,
LLC.,

          Plaintiff,

    v.

CUSTOM NUTRITION
LABORATORIES, LLC.,
NUTRITION SCIENCE
LABORATORIES, LLC.,
and ALAN JONES,

          Defendants.

Case No. 12-13850
Hon. Terrence G. Berg

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. 332) AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 328)

## I.    Introduction

This is a breach of contract case that involves the liquid energy supplement 5-hour ENERGY®. Plaintiff Innovation Ventures, the manufacturer of 5-hour ENERGY®, alleges that, among other things, Defendants Custom Nutrition Laboratories ("CNL"), Nutrition Science Laboratories ("NSL"), and Alan Jones breached an agreement with Plaintiff not to produce energy shots containing ingredients from the Choline Family.

After several motions to dismiss by Defendants (Dkts. 16, 30, 74, and 78), a previous motion for summary judgment by Defendants (Dkt. 199), the first phase of a bifurcated jury trial (Dkts. 111, 301-308), and a motion to dismiss Defendants' counterclaims brought by Plaintiff (Dkt. 317), the case is now approaching the second phase of the bifurcated jury trial, and both Plaintiff and Defendants have filed motions for summary judgment. Dkts. 332 (Plaintiff's motion) and 328 (Defendants' motion). For the reasons below, both motions are **GRANTED IN PART** and **DENIED IN PART**.

## II.   Background

Plaintiff and Defendants have engaged in aggressive litigation for nearly five years in this Court, after having settled a previous, also ferociously litigated case in the state of Texas. The Court described this unfortunate story of business mistrust and mistreatment in its last summary judgment order, Dkt. 219, and none of the key facts have changed since then, so a summary of those facts will suffice.

In short, Plaintiff hired CNL to develop a formula for what became 5-hour ENERGY® and to produce bottles of the energy shot that Plaintiff sold in the market. Plaintiff then switched to another supplier. CNL sued Plaintiff in Texas, the parties eventually settled the case, and, as part of the Settlement Agreement, CNL and

Alan Jones (CNL's President) agreed not to make energy shots containing ingredients in "the Choline Family."

CNL then sold its assets to NSL, and, as part of the purchase, NSL agreed to be bound to the Choline Family restriction in the Settlement Agreement between CNL, Jones, and Plaintiff. Alan Jones joined the NSL team, and together NSL and Jones allegedly went ahead and produced energy shots that violated the Choline Family restriction, and sold those energy shots to major retailers around the country.

Plaintiff sued CNL, as well as NSL and Jones, for breach of contract and a number of other things, and after five years of motion practice and the completion of the first phase of a bifurcated trial, we have arrived at the current stage of this case: cross-motions for summary judgment on issues relating to the second phase of trial.[1] Plaintiff's and Defendants' cross-motions for summary judgment are now before the Court, motions in limine are due tomorrow, and the second phase of the bifurcated trial is a month away.

---

[1] In a story for another time, in another case pending before this Court, Plaintiff has sued NSL again, along with a company Plaintiff alleges is NSL's alter-ego, because, like CNL, NSL has now gone out of business.

## III. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012).

## IV.  Analysis

Many of the arguments raised in these cross-motions for summary judgment are interrelated, so the Court will address both motions, starting with Plaintiff's motion, and will discuss related issues together.

### a. Plaintiff's Motion for Partial Summary Judgment

Plaintiff raises four arguments in its motion: (1) Defendants' patent counterclaims fail as a matter of law; (2) Plaintiff is entitled to summary judgment on Count I (breach of the Choline Family restriction); (3) Defendants' breaches of the Choline Family restriction tolled the restriction's duration; and (4) Defendants' duress counterclaims fail as a matter of law.

#### i. Plaintiff's argument concerning Defendants' patent-disclosure counterclaims is moot

As a preliminary matter, Plaintiff's argument that it is entitled to summary judgment on Defendants' patent-disclosure counterclaims, Dkt. 332 Pg. ID 17,886, is moot; the Court granted Plaintiff's motion to dismiss the counterclaims on April 7, 2017. Dkt. 337. The patent-disclosure counterclaims are no longer pending, so summary judgment on those claims is inappropriate and Plaintiff's motion with respect to this argument is **DENIED**.

### ii. Plaintiff is not entitled to summary judgment on Count I (breach of Settlement Agreement § 5(c)(i))

Plaintiff argues that it is entitled to summary judgment on Count I because both NSL and Jones breached § 5(c)(i) of the Settlement Agreement in multiple ways. Dkt. 332, Pg. ID 17,878. Plaintiff has established that NSL made energy shots containing betaine and Alpha-GPC. Dkt. 332, Pg. ID 17,878. Jones sold those energy shots on NSL's behalf. Dkt. 332, Pg. ID 17,878. And NSL and Jones repeated the process at least nine times, with Jones securing agreements by other companies to pay NSL to make the following energy shots, all of which used Choline Family ingredients in violation of § 5(c)(i):

- *Rock On* (Walgreens);
- *NXT* (Walgreens);
- *Slam* (AdvoCare);
- *Triple f/x* (RBC Life Sciences);
- *Champion Energy* (Kiosk Kings);
- *Winchester Pump Up* (Max Professional);
- *The Energy Shot* (GNC);
- *Up&Up* (Weider Global Nutrition);
- *Members' Mark/Simply Right* (Weider Global Nutrition);
- *Weider High Energy* (Weider Global Nutrition);
- *Kirkland Signature* (Costco); and
- *Shotz* (Velocity).

Dkt. 332, Pg. ID 17,879.

Plaintiff also argues that Jones breached § 5(c)(i) by helping NSL make the shots. Specifically, Plaintiff submits that Jones: signed contracts as President of NSL; called himself President of NSL; discussed formulations for NSL's energy shots with David Henzler (NSL's chief formula creator); and dealt with other production-related issues such as production readiness, taste-testing, product testing methods, facility inspections, and health department citations. Dkt. 332, Pg. IDs 17,879-17,880. And Plaintiff argues that Jones continued to offer to sell energy shots that contained betaine after he left NSL and started working for Universal Nutrition. Dkt. 332, Pg. ID 17,880.

Defendants don't deny these allegations. Dkt. 333, Pg. ID 18,325. Instead, they argue that—although they might have breached § 5(c)(i)—Plaintiff may not secure summary judgment on Count I because Defendants' laches defense could shield them from being held liable for their breaches.[2] Dkt. 333, Pg. ID 18,324. The laches

---

[2] Elsewhere in their briefing, the parties discuss Defendants' "illegal restraint on trade" and duress defenses. And elsewhere in this order, the Court discusses why both of those defenses fail as a matter of law.

Also, Defendants argue that to secure summary judgment, Plaintiff needs to disprove each affirmative defense that Defendants raised in their Answer. Dkt. 333, Pg. ID 18,324. Defendants have not cited controlling authority for this proposition, and have presented no argument that would warrant imposing such a harsh standard—one

defense applies, Defendants argue, because Plaintiff delayed filing this lawsuit for three years during which Defendants openly used ingredients that Plaintiff believed were prohibited under the Choline Family restriction's ambiguous "catch-all" language, and Plaintiff now seeks to recover damages it claims accrued in that three-year period. Dkt. 333, Pg. IDs 18,330-18,331.

To support their argument, Defendants submit that:

- NSL made Rock On using choline bitartrate (which is prohibited by name) from October 2009 until November 2011, and afterwards continued to make Rock On using betaine (which is not prohibited by name, but which Plaintiff believed was covered under the "catch-all" language of the prohibition);

- NSL made Slam using betaine from October 2009 until NSL stopped all energy shot production in March 2014.

- Plaintiff knew that both Rock On and Slam were CNL products (Exhibit D to the Settlement Agreement lists both products), and knew or should have known that they contained choline bitartrate or betaine;

- Plaintiff nevertheless waited three years to file this lawsuit; and

- The three-year delay prejudiced Defendants because Plaintiff now seeks tens of millions of dollars in damages for products that Defendants developed and sold during the period of delay—products that Defendants could have developed using other chemicals if Plaintiff had filed its lawsuit earlier.

Dkt. 333, Pg. IDs 18,327-18,331.

---

that would force Plaintiff to disprove numerous boilerplate affirmative defenses on which Defendants blocked discovery and about which they have not uttered a word since filing their Answer.

Plaintiff replies that because it filed its claims within the statute of limitations, laches is inapplicable. Dkt. 338, Pg. ID 20,517. Plaintiff also argues that there was no delay of the sort laches requires because Defendants have not submitted a specific date on which they claim Plaintiff knew or should have known of their breaches. Dkt. 338, Pg. ID 20,518. And Plaintiff argues that Defendants have not submitted proof that they were prejudiced by any delay, and that in fact there was no prejudice because, after Plaintiff sued, Defendants denied liability and continued selling products rather than stopping their use of the prohibited ingredients. Dkt. 338, Pg. IDs 20,518-20,519.

Laches is the "negligent and unintentional failure to protect one's rights." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002). Under Michigan law, to successfully assert a laches defense, a party must show that there was a passage of time combined with some prejudice to the party asserting the defense. *Head v. Benjamin Rich Realty Co.*, 55 Mich. App. 348, 356 (Mich. Ct. App. 1974). Laches is concerned mainly with the question of the inequity of permitting a claim to be enforced, and depends on whether the plaintiff has exercised due diligence. *Sloan v. Silberstein*, 2 Mich. App. 660, 676, 141 N.W.2d 332 (1966).

Defendants have set out their theory of why laches should bar Plaintiff from recovering for breach of Count I. Defendants made

and sold some products containing ingredients that the Settlement Agreement explicitly prohibited and others that Plaintiff believed were prohibited, but Plaintiff waited three years after the execution of the Settlement Agreement to file this lawsuit. In the meantime, Defendants—without notice by way of a lawsuit that Plaintiff viewed the products as violating the restrictive covenant—expanded the products they made (which inflated the damages Plaintiff could recover). Had Defendants been on notice of the alleged breach, they argue, they could have initially designed those products not to use prohibited ingredients.

And Plaintiff's arguments in reply are all without merit. First, Plaintiff's contention that laches are inapplicable because Plaintiff filed its claims within the applicable statute of limitations is incorrect. *MEEMIC v. Morris*, 460 Mich. 180, 200-201 (1999), the case Plaintiff cites to support its position, does not contain a well-developed discussion of the laches doctrine. More importantly, the case expressly limits its laches holding to "the circumstances of [that] case," which are not present here or generally in laches case law.[3] Instead, Michigan courts have noted time and again—both

---

[3] *Morris* involved the retroactive application of *Profit v. Citizens Ins. Co. of Am.*, 444 Mich. 281, 506 N.W.2d 514 (1993): a Michigan Supreme Court opinion that reversed a Michigan Court of Appeals opinion prohibiting insurance companies from deducting social security disability benefits from work-loss benefits paid out under the

before and after *Morris*—that "laches may bar a legal claim even if the statutory period of limitations has not yet expired." *Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 281 Mich. App. 429, 456-57 (2008) (citing *Eberhard v. Harper-Grace Hosp.*, 179 Mich. App. 24, 35-36 (1989) and *Citizens Ins. Co. of America v. Bryant*, 216 Mich. App. 217, 228 (1996)).

Second, although Defendants have not explicitly stated the exact day they claim Plaintiff should have discovered the breach, Plaintiff fails to cite a case that requires a party seeking to raise a laches defense to allege an exact date that the other party learned or should have learned there was reason to sue.

Third, by arguing that Defendants have not shown proof of prejudice, Plaintiff misunderstands the point of Defendants' argument.

---

insurance policy. After the Michigan Supreme Court held that insurance companies *could* make the deduction, Plaintiffs sued for reimbursement of benefits they had overpaid in reliance on the Court of Appeals' previous decision. Defendants raised laches as a defense to the lawsuit, but the Michigan Supreme Court refused to apply it. Instead, the court held that the delay (which the Court of Appeals partly caused because insurance companies could not bring such claims while its prior decision was in effect) did not bar the lawsuit in its entirety, but did require the plaintiffs to prove that reimbursement was fair under the circumstances. In other words, the court appears to have recognized—albeit implicitly—that there is an exception to laches where a court's mistaken interpretation of law, rather than a party's inaction, caused the delay in the filing of the lawsuit. Here, there is not even a hint of a court's misapplication of law forcing Plaintiff to delay filing suit. So *Morris* is inapplicable.

Defendants' theory is that Plaintiff permitted Defendants to make products that Plaintiff—not Defendants—considered to be breaching products, then sat back, watched the potential damages accrue, and only later sued after Defendants had created the offending product-formulas, set up manufacturing lines, and developed customers. Plaintiff assumes that because Defendants did not immediately stop making and selling products containing betaine and alpha GPC when they were sued after they had been making them for three years, Defendants also would not have stopped if they had been sued at an earlier time. But the entire point of Defendants' argument is that they would have reacted differently because they could have designed the products differently from the outset.

Defendants have presented enough evidence of their laches defense to create genuine issues of material fact such that Count I must go to a jury. For example, there are issues of fact concerning (1) when Plaintiff learned of the breach, (2) when Plaintiff should have learned of the breach, (3) how long Plaintiff actually delayed in bringing its claim (if at all), and (4) what (if any) prejudice Defendants suffered from any delay. Thus, the Court will rely on a jury "to consider [the] factual disputes in [Defendants'] laches defense," *GMC v. Lanard Toys, Inc.*, 468 F. 3d 405, 421 (6th Cir. 2006), and will then "look at the prejudice to [Defendants] occasioned by

the delay" (if any) and will determine whether there was "an intermediate change of conditions that renders it inequitable to allow [Plaintiff] to enforce its rights." *Luke v. Home-Owners Ins. Co.*, 2017 Mich. App. LEXIS 96, at *10 (Ct. App. Jan. 19, 2017). Consequently, Plaintiff is not entitled to summary judgment on Count I, and its motion with respect to this argument is **DENIED**.

### iii. Plaintiff may not secure tolling of § 5(c)(i)'s duration

Plaintiff argues that under the doctrine of equitable tolling, Defendants' breaches of § 5(c)(i) tolled the duration of the restrictive covenant because Defendants flouted their obligations under the Settlement Agreement. Dkt. 332, Pg. IDs 17,880-17,885. Specifically, Plaintiff argues that Defendants flouted their obligations by:

- Using choline bitartrate and choline citrate—two ingredients that § 5(c)(i) expressly prohibits;
- Interchanging Choline Family ingredients with each other, without regard for § 5(c)(i)'s Choline Family prohibition;
- Denying the true nature of Jones's relationship with NSL;
- Falsely maintaining that Jones did not work for NSL;
- Neglecting to tell NSL's chief Energy Liquid formulator about the § 5(c)(i) restrictions despite having incorporated the restrictions into the Asset Purchase Agreement by which NSL bought CNL's assets;
- Jones claiming that he was not individually liable under the Settlement Agreement; and

- Jones testifying that NSL "could make anything that NSL wanted to" and that he was not concerned about NSL complying with the Settlement Agreement.

Dkt. 332, Pg. IDs 17,883.

Plaintiff also argues that § 5(a)(xii) of the Settlement Agreement specifically provides that the duration of the restrictions is extended (or tolled) by the time period of any breach. Dkt. 332, Pg. IDs 17,884. And Plaintiff contends that any tolling remedy should be in addition to its recovery of monetary damages. Dkt. 332, Pg. ID 17,884. Indeed, Plaintiff submits that it needs to obtain both tolling and damages for it to realize its bargained-for consideration. Dkt. 332, Pg. ID 17,885.

Defendants respond that even if the period of restriction had been extended during Defendants' breaches, it has been more than three years since either of them have breached § 5(c)(i), so there is nothing left for the Court to toll. Dkt. 333, Pg. ID 18,333. NSL also notes that the Court has already decided that it is not bound by § 5(a), so there is no basis in the Settlement Agreement to toll the restrictive covenant as to it. Dkt. 333, Pg. ID 18,333. And Defendants argue that equitable tolling is inappropriate because they did not flout their obligations and also because the Court ruled that the restrictive covenant, as originally drafted, was unreasonable. Dkt. 333, Pg. IDs 18,334-18,336. Finally, Defendants argue that Plaintiff may not both secure tolling and also recover damages for

alleged breaches that took place prior to when the contract was reformed because, until the Court reformed the contract, the contract was not capable of being breached. Dkt. 333, Pg. ID 18,339.

The Court concludes that Plaintiff may not toll the duration of the restrictive covenant. By asking the Court to rule that the restrictive covenant began running not on the date CNL and Jones signed the Settlement Agreement, but instead on the first date that Defendants ceased breaching § 5(c)(i), Plaintiff seeks to enforce the restrictive covenant against Defendants. In other words, Plaintiff seeks specific performance of the contract.

But, under Michigan law, "specific performance is not granted where damages would be an adequate remedy." *Downing v. Life Time Fitness, Inc.*, No. 10-11037, 2010 U.S. Dist. LEXIS 136928, at *18 (E.D. Mich. Dec. 28, 2010) (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 584 (6th Cir. 2007)). Indeed, to obtain specific performance, a party must demonstrate that there is no adequate remedy at law. *JPMorgan*, 510 F.3d at 584 (citing *Laker v. Soverinsky*, 318 Mich. 100, 27 N.W.2d 600, 601 (Mich. 1947) ("Specific performance will not be decreed where there is an adequate remedy at law")). Here, rather than attempting to demonstrate that no remedy at law will compensate it for the harm Defendants allegedly caused by breaching § 5(c)(i), Plaintiff has requested and still actively seeks damages. Dkt. 187, Pg. ID 6,716; Dkt. 332,

Pg. ID 17,884. Thus, Plaintiff may not seek to enforce § 5(c)(i) by tolling its duration.[4]

---

[4] Also, Plaintiff may not secure both tolling and damages for the same breach. "[R]emedies of specific performance and money damages for breach of contract are mutually exclusive." *Zeichman*, 2014 Mich. Cir. LEXIS 235 (Mich. Cir. Ct. 2014) (citing *Rowry v. Univ of Mich.*, 441 Mich. 1, 9 (1992) ("Rather than seeking money damages for breach of contract, the plaintiff in this case seeks specific performance"); *Forest City Enterprises. Inc v. Leemon Oil Co*, 228 Mich. App. 57, 79-80 (1998) ("equitable relief refers to the case of one seeking an injunction or specific performance instead of money damages")); see also *MoonScoop Sas v. Am. Greetings Corp.*, 489 F. App'x 95, 100 (6th Cir. 2012) (noting that, had a party secured summary judgment on its breach of contract claim, it would have been entitled to "specific performance *or* damages" (emphasis added)).

The doctrine of election of remedies also bars Plaintiff from securing both tolling and damages. "Election of remedies is the legal version of the idea that a plaintiff may not have his cake and eat it too. The doctrine is remedial in nature and does no more than prevent double recovery." *Hickson Corp. v. Norfolk S. Ry. Co.*, 260 F.3d 559, 566-67 (6th Cir. 2001) (citations omitted). The purpose of tolling a restrictive covenant is to give the party the benefit of its bargain. And the purpose of monetary damages is to compensate a party who has been harmed by a contract breach and has therefore not received the benefit of its bargain. So to allow Plaintiff to pursue both remedies would be to allow it to obtain double the benefit of its bargain: first, tolling would confer the benefit Plaintiff bargained for (a period during which the Defendants were prohibited from using certain chemicals), and then damages would compensate Plaintiff as if it had *not* received the benefit (allowing a monetary recovery for the economic value of the *loss* of the three-year Choline Family restriction period). In other words, Plaintiff would emerge from the lawsuit in a better position than it would have been in if Defendants had not breached § 5(c)(i).

To be sure, Plaintiff has cited two breach-of-contract cases in which parties secured both tolling and damages: *Best Team Ever v. Prentice*, 2015 WL 3874477 (Mich. App. June 23, 2015) and *Presto-X-Co. v. Ewing*, 442 N.W.2d 85, 90 (Iowa 1989). But both cases are inapplicable here. In *Best Team Ever*, the court tolled the restrictive period as a remedy for the breach of one provision of the contract, and awarded damages to compensate the plaintiff for the breach of a separate provision. 2015 WL 3874477 at *4, 6-8. And *Presto-X* is a non-binding decision by a court in another state applying different law. Thus the cases are distinguishable, and do not demonstrate an exception to the rule under Michigan law that a party may not secure specific performance of the contract when damages are an adequate remedy.

The time period for which Plaintiff may recover damages is also an issue of contention between the parties. In Plaintiff's motion, it seeks a ruling that it may recover damages from 2009 until 2014. Dkt. 332, Pg. ID 17,884. And in Defendants' motion, they seek a ruling that the damages period ends no later than October 14, 2012. Dkt. 328, Pg. ID 15,297. As explained above, Plaintiff may not toll the restrictive covenant's duration because Plaintiff has asserted that damages are an adequate remedy for Defendants' alleged breach of § 5(c)(i). Thus, Plaintiff may recover damages from Jones stemming from his breach of § 5(c)(i) between August 17, 2009 and

August 17, 2012: the date Jones signed the settlement agreement[5] to the end date of the restrictive covenant (as reformed by the Court). And Plaintiff may recover damages from NSL stemming from its breach of § 5(c)(i) between October 14, 2009 and August 17, 2012, that is, from the date that NSL acquired CNL's assets and took on CNL's obligations under § 5(c)(i) to the end date of the restrictive covenant (as reformed by the Court).

The period of time for which Plaintiff may recover damages from NSL is shorter than the period of time for which Plaintiff may recover damages from Jones because NSL took over CNL's obligation after the restrictive period had started to run. If the Court were to apply the same period to both NSL and Jones, then Plaintiff would

---

[5] Defendants point out that the Court reformed the restrictive covenant to run for three years, but that the Court used as the start date the date of the Asset Purchase Agreement between CNL and NSL (October 14, 2009) rather than the date of the Settlement Agreement between Plaintiff, CNL, and Jones. Dkt. 328, Pg. ID 15,294. Section 5(c)(i) began running the day Plaintiff, CNL, and Jones signed the Settlement Agreement, so that date is the correct start-date for the reformed restrictive covenant. Thus, the Court **RECONSIDERS** its prior Order, Dkt. 219, and finds that § 5(c)(i) began running on August 17, 2009.

Also, Plaintiff submits that the correct date to begin the running of § 5(c)(i) is after the end of the sell-through period provided by § 5(d). But, as noted below, those are two separate provisions, and Plaintiff has not sued under § 5(d), so it may not secure damages for breach of that provision and it may not use that provision to calculate the beginning and end dates of the broader § 5(c)(i).

be able to recover money from NSL from a time when NSL had no contractual obligations to Plaintiff. And if the Court were to rule that Plaintiff could recover damages from NSL for breaches that took place up to three years after NSL purchased CNL's assets, then the restrictive covenant would run for more than three years— longer than the Court reformed the covenant to run. See Dkt. 219, Pg. ID 9,237. Thus, the operation of the contracts impose separate (albeit almost identical) time periods for which Plaintiff may recover damages from Jones and NSL.

Finally, Defendants' argument that Plaintiff may not secure injunctive relief is correct. Dkt. 328, Pg. ID 15,294. Plaintiff may not toll the duration of § 5(c)(i), meaning the last date on which Defendants could have breached § 5(c)(i) is August 17, 2012. That was nearly five years ago, so the Court cannot enjoin Defendants once this lawsuit finally comes to an end. Further, Plaintiff may not secure injunctive relief because it seeks damages for Defendants' alleged breach of § 5(c)(i). As the Sixth Circuit has recognized—albeit in a case applying federal law, not Michigan law—"an injunction generally should not issue if there is an adequate remedy at law." *CSX Transp., Inc. v. Tenn. State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992). Here, Plaintiff's decision to seek damages demonstrates that it believes that there is an adequate remedy at

law (the damages Plaintiff seeks) for Defendants' alleged breaches. Thus Plaintiff may not also secure injunctive relief.

To summarize, should Plaintiff overcome Defendants' laches defense at trial and hold Defendants' liable for their breaches of § 5(c)(i), Plaintiff may recover damages to compensate it for the breaches. But it may not attempt to toll the duration of § 5(c)(i), and it may not secure injunctive relief against either NSL or Jones.

For these reasons, to the extent that Plaintiff's motion seeks summary judgment on whether the duration of the settlement agreement's restrictive covenant under § 5(c)(i) should be extended as a matter of law, that motion is **DENIED**.

The above analysis also disposes of two of the grounds relied on by Defendants in their motion for summary judgment. First, Defendants' motion with respect to the argument that Plaintiff may not obtain injunctive relief is **GRANTED.** Plaintiff may not secure an injunction against Defendants. Second, Defendants' motion with respect to the argument that the damages period must end no later than October 14, 2012 is **GRANTED**. As noted above, the damages period for Jones's breach of § 5(c)(i) runs from August 17, 2009 until August 17, 2012, and the damages period for NSL's breach of § 5(c)(i) runs from October 14, 2009 until August 17, 2012.

### iv. Defendants' purported duress defense fails as a matter of law

Plaintiff argues that Defendants are not capable of mounting a duress defense as to NSL because the facts concerning duress relate to CNL (and NSL is not a successor to CNL), and as to Jones because of six alternative and independent reasons:

- Res judicata and collateral estoppel bar Jones's duress defense because Jones's misappropriation claim was dismissed with prejudice and CNL and Jones stipulated that Plaintiff has always owned the formula;

- Jones entered into the Settlement Agreement with full knowledge of all the facts, after consulting with legal counsel and using counsel to negotiate the agreement;

- Jones had alternative legal remedies and chose to forego them;

- Plaintiff did not commit an illegal act as the formula has always belonged to it and never belonged to Jones;

- Economic duress is legally insufficient under Michigan law; and

- Jones ratified the terms of the Settlement Agreement.

Dkt. 332, Pg. IDs 17,892-17,893.

Defendants respond that, although the standard is high for a duress defense under Michigan law because it requires an illegal act, they have raised a genuine issue of fact over "whether the Plaintiff committed a theft of CNL's trade secrets and then leveraged that

theft to coerce CNL to agree to the terms of the Settlement Agreement" and thus may present the defense at trial. Dkt. 333, Pg. ID 18,352.

Having reviewed the record and the nature of Defendants' arguments, the Court concludes that Plaintiff's motion is well taken; neither NSL nor Jones has a duress defense.

Under Michigan law, "to succeed with respect to a claim of duress, [Defendants] must establish that *they* were illegally compelled or coerced to act by fear of serious injury to their persons, reputations, or fortunes." *Farm Credit Servs., P.C.A. v. Weldon*, 232 Mich. App. 662, 681-682 (Mich. Ct. App. 1998) (emphasis added).

Here, the facts alleged by Defendants are that Plaintiff compelled only CNL to sign the Settlement Agreement. Dkt. 333, Pg. IDs 18,350-18,351 ("there is really no dispute but that *CNL* was acting out of 'fear of serious injury to their persons, reputations, or fortunes'") ("*CNL* was in dire financial straights [sic] at the time of the settlement") ("Plaintiff obtained the formula under false pretenses and provided it to another manufacturer and then fraudulently induced *CNL* to incur substantial expenses right before cutting off all orders with *CNL* in a scheme designed and destined to

drive *CNL* out of business") (emphasis added). NSL does not contend that Plaintiff illegally compelled *it* to sign the Settlement Agreement, so it may not present a duress defense at trial.[6]

The same is true for Jones; he alleges only that Plaintiff coerced CNL to enter into the Settlement Agreement, not that Plaintiff coerced him, too. Indeed, he was represented by counsel, was an officer of CNL, and is highly experienced in the industry. He points to no facts showing that Plaintiff illegally compelled or coerced *him* to act by fear of serious injury to his person, reputation, or fortune, as would be required to raise an issue of fact on a duress defense. Thus he may not present a duress defense at trial. Because the Court resolves the argument as to Jones based on his failure to allege that he was coerced to sign the Settlement Agreement, the Court need not address Plaintiff's other arguments relating to the inadequacy of Jones's duress defense.

---

[6] NSL was not a party to the Settlement Agreement, and the Court has already ruled that NSL is not a successor to CNL (a ruling sought by NSL), Dkt 219, Pg. IDs 9,202, 9,205, 9,215, so NSL may not now stand in CNL's shoes and assert the same defenses that CNL could have asserted in this litigation. See *Lexus Fin. Servs., Inc. v. Trombly Tindall, P.C.*, 261 Mich. App. 417, 421–2 (2004) (Cooper, P.J. dissenting) ([I]f [defendants] individually are not successors in interest to the lease, they have no standing to assert a defense to an action for repossession, replevin or judicial foreclosure or to request arbitration"); *Deere & Co. v. FIMCO Inc.*, 2017 WL 927235 at *27 (W.D. Ky. 2017) ("equitable defenses extend to successors-in-interest where privity has been established").

Although CNL might have had a duress defense in the case, that defense is not available to NSL and Jones. Plaintiff's motion with respect to this argument is **GRANTED**.

### b. Defendants' Motion for Summary Judgment

Defendants raise 14 arguments in their motion for summary judgment.[7] In the discussion of Plaintiff's argument that Defendants' breaches of the Choline Family restriction tolled the restriction's duration, the Court resolved two of these arguments—that Plaintiff may not obtain injunctive relief and that Plaintiff may not recover damages past October 14, 2012. Defendants' remaining arguments are addressed below.

### i. The settlement agreement is no longer an illegal restraint on trade

Defendants argue that the Settlement Agreement is an illegal restraint on trade because it has an adverse impact on competition in the same market in which Plaintiff seeks damages. Dkt. 328, Pg. ID 15,282. The Court need go no further with recitation of the parties' arguments to resolve this.

Throughout this case Defendants have attempted to use phrase "illegal restraint on trade" to mean different things at different

---

[7] The prolixity of argumentation in Defendants' motion typifies the over-litigation of this case. The parties throw in everything including the kitchen sink, then go to Home Depot®, buy another kitchen sink, and throw that in, too.

times. As the Court has noted previously, a broad and unqualified reference to the phrase "illegal restraint on trade" could be understood to raise claims of illegality under the federal Sherman and Clayton Antitrust Acts, Mich. Comp. Laws § 445.772, or Mich. Comp. Laws § 445.774(a)(1). Dkt. 337, Pg. ID 20,505. Defendants began using the phrase to refer to the restrictive covenant's duration under Mich. Comp. Laws § 445.774(a)(1), Dkt. 45, Pg. ID 743. Then, years into the litigation and after Defendants had succeeded on their "illegal restraint on trade argument" and had seen the Court reform the restrictive covenant's duration, they attempted to breathe new life into the phrase by redefining it to mean that the Settlement Agreement somehow violated federal antitrust laws. See Dkt. 318, Pg. ID 15,135 (arguing that NSL's counterclaim for antitrust violations "clearly relate[d] back" to NSL's counterclaim seeking a declaratory judgment that the settlement agreement was an illegal restraint on trade).

The Court will hold Defendants to the first meaning they gave the phrase. The Court has already held that the Choline Family restriction's duration was too long and therefore unenforceable, and further reformed the restriction's duration so that the agreement is legal. Dkt. 219, Pg. IDs 9,234-9,327.

Thus Defendants are not entitled to summary judgment on the premise that the Settlement Agreement is still somehow an illegal

restraint on trade. Defendants' initial position prevailed in pointing out the unreasonableness of the restrictive covenant's duration, and that contract has now been reformed and that problem cured. Defendants may not raise this affirmative defense at trial. Defendants' motion with respect to this argument is **DENIED**.

### ii. Plaintiff may not attempt to prove lost profits by using a market-share calculation, and may not recover a reasonable royalty

Defendants argue that Plaintiff may not prove lost profits using a market-share calculation and may not recover a reasonable royalty because both remedies apply only in lawsuits for patent infringement. Dkt. 328, Pg. IDs 15,267, 15,282. Defendants also attack the market-share calculation itself. Dkt. 328, Pg. ID 15,272.

Plaintiff responds that Defendants seek to hold Plaintiff to a higher standard of proving damages than the law requires, noting that damages are an issue of fact decided by the jury. Dkt. 334, Pg. ID 18,373. Plaintiff also argues that its lost profits calculation methodology is sound, and runs through the analysis at length. Dkt. 334, Pg. ID 18,372, 18,376-18,379. And Plaintiff argues that a reasonable royalty is an appropriate remedy because a District Court in Washington reached that conclusion when applying Washington contract law. Dkt. 334, Pg. ID 18,385 (citing *Veritas Oper.*

*Corp. v. Microsoft Corp.*, 2008 WL 7404617, *3-4 (W.D. Wash. Feb. 26, 2008)).

Defendant replies by emphasizing the same arguments it raised in its opening brief, and by distinguishing *Veritas* on the basis that it applied Washington law, not Michigan law. Dkt. 340, Pg. IDs 20,607-20,610; 20,613-20,615.

After reviewing the parties' arguments and the relevant authorities, the Court concludes that Plaintiff may not attempt to prove its lost profits using a market-share calculation, and may not recover a reasonable royalty.

This is not a patent infringement case. Plaintiff has not asserted a legal monopoly as it would have if it had asserted a patent. And Plaintiff has not put one of its legal monopolies at risk as it would have if it had asserted a patent (which would allow Defendants to present invalidity contentions to the Court, and would provide an incentive for Defendants to seek to have the Patent Trial and Appeal Board revoke the patent). In other words, Plaintiff is attempting to invoke the benefits of a patent infringement case without exposing itself to any of the burdens of one. Plaintiff has cited no case for the proposition that it may calculate lost profits in a breach of contract case by using a market-share analysis. And Plaintiff has cited only a non-controlling case that applies

Washington contract law, not Michigan contract law, for the proposition that a reasonably royalty is an appropriate remedy in a breach of contract case. Indeed, in citing the case law it does, Plaintiff appears to have overlooked the Federal Circuit's pronouncement that there must be a finding of patent infringement for a court to award a reasonably royalty. *Gjerlov v. Schuyler Labs. Inc.*, 131 F. 3d 1016, 1024 (Fed. Cir. 1997).

Without controlling law stating that, under Michigan contract law, Plaintiff may invoke federal patent-infringement remedies, Plaintiff may not pursue those remedies in this case.[8] Defendants' motion with respect to these arguments is **GRANTED**.

---

[8] That said, Plaintiff may still recover lost profits under a non-patent-infringement specific method of calculation. Lost profits "are subject to determination with a 'reasonable' degree of certainty as opposed to being 'conjectural or speculative.'" *Fister v. Henschel*, 7 Mich. App. 590, 595–596 (1967); *Denha v. Jacob*, 179 Mich. App. 545 (1989). If the nature of the case means that Plaintiff may be able to submit only an estimate of lost profits, Plaintiff can do so but must place before the jury all of the facts and circumstances that tend to prove the probable amount. *Jim-Bob, Inc v. Mehling*, 178 Mich. App. 71 (1989); *Body Rustproofing, Inc v. Michigan Bell Tel Co*, 149 Mich. App. 385 (1986). And damages for lost profits must be based on net profits, not gross profits. See *Lawton v. Gorman Furniture Corp*, 90 Mich. App. 258 (1979); *Benfield v. HK Porter Co*, 1 Mich. App. 543 (1965).

### iii. Plaintiff may not recover disgorgement of Defendants' proceeds

Defendants argue that Plaintiff may not obtain disgorgement[9] of proceeds because (1) Plaintiff did not ask for disgorgement within its specific causes of action, it only asked for disgorgement in its prayer for relief and (2) Plaintiff abandoned its request for disgorgement when it voluntarily dismissed its claims for unfair competition and unjust enrichment. Dkt. 328, Pg. ID 15,284.

Plaintiff responds that it may obtain disgorgement because § 5(c)(i) incorporates § 5(d), which provides disgorgement as a remedy. Dkt. 334, Pg. ID 18,389. Plaintiff also argues that disgorgement is an equitable remedy that Plaintiff specifically asked for in its request for relief in every version of its complaint. Dkt. 334, Pg. ID 18,390.

Defendants reply that to allow Plaintiff to obtain disgorgement would be to allow it to resurrect its unjust enrichment claim—implying that disgorgement is only available in unjust enrichment cases. Dkt. 340, Pg. ID 20,613.

Plaintiff may not obtain disgorgement of Defendants' proceeds. First, as to NSL, § 5(d) is inapplicable because it is not incorporated

---

[9] "Disgorgement is an equitable remedy," *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985), that forces a defendant to give up an amount of money "equal to the defendant's unjust enrichment." *Gavriles v. Verizon Wireless*, 194 F. Supp. 2d 674, 681 (E.D. Mich. 2002).

into § 5(c)(i). Section 5(c)(i) prohibits the CNL parties from producing energy shots that contain ingredients in the Choline Family, while § 5(d) outlines a sell-through period in which the CNL parties could for three months produce products *using formulas that they were using for products in the market at the time they signed the Settlement Agreement*, and could for three more months sell products fitting that description; § 5(c)(i) contains a general prohibition that is "subject to" the exception contained in § 5(d). In other words, § 5(c)(i) does not include § 5(d) within its terms to expand its reach, it sets off § 5(d) as another subsection that limits § 5(c)(i)'s scope. If, the day after signing the Settlement Agreement, a CNL party introduced a product with a new formula that used Choline Family ingredients, the party would be in breach of § 5(c)(i), but not in breach of § 5(d). Thus, the Court reads the remedies contained in § 5(d) as applying only to breaches of § 5(d), not to breaches of the broader § 5(c)(i). So Plaintiff may not obtain disgorgement of NSL's proceeds based on § 5(d).

Second, as to Jones, although he is bound to § 5(d), Plaintiff has not sued him for breaching that provision. Plaintiff alleges only that Jones breached his covenant not to use prohibited ingredients (§ 5(c)(i)), not that he breached his covenant to stop making products using certain formulas after three months and to stop selling

those products after six months. Dkt. 187, Pg. IDs 6,705-6,706. So Plaintiff may not disgorge Jones's proceeds based on § 5(d).

Third, Plaintiff may not obtain disgorgement of Defendants' proceeds because Plaintiff dropped its unjust enrichment claim. "Disgorgement is an equitable remedy." *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985). Indeed, it forces "a defendant to give up the amount equal to the defendant's unjust enrichment." *Gavriles v. Verizon Wireless*, 194 F. Supp. 2d 674, 681 (E.D. Mich. 2002). To obtain disgorgement, a plaintiff must "produce evidence from which the Court can make a 'reasonable approximation' of [a] [d]efendant's unjust enrichment," otherwise "disgorgement will not be allowed." *Rochow v. Life Ins. Co. of N. Am.*, 851 F. Supp. 2d 1090, 1093 (E.D. Mich. 2012) (vacated on other grounds by *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364 (6th Cir. 2015) (en banc)); see also *SEC v. Monterosso*, 756 F. 3d 1326 (11th Cir. 2014) ("Disgorgement is an equitable remedy intended to prevent unjust enrichment"). Here, Plaintiff raised a claim of unjust enrichment in its initial complaint, Dkt. 1, Pg. IDs 8-9, but then dropped that claim in both its First Amended Complaint and Second Amended Complaint. Dkt. 58; Dkt. 187. Consequently, it may not obtain an equitable remedy that attaches only to a claim that it has abandoned. Defendants' motion with respect to this argument is **GRANTED**.

### iv. Defendants are not entitled to summary judgment on Counts II-V, VII, and VIII on the grounds that Plaintiff has produced no evidence of damages for those claims

Defendants argue that Plaintiff has produced no evidence of damages as to Counts II-V, VII, and VIII, and submit—without a single citation of a statute or court opinion—that they are therefore entitled to summary judgment on those claims. Dkt. 328, Pg. IDs 15,286-15,287.

This argument is entirely without merit. Plaintiff need not prove actual damages to establish liability for breach of contract; Plaintiff can recover nominal damages even when it has suffered no actual damages. "Nominal damages are those damages recoverable where [a] plaintiff's rights have been violated by breach of contract or tortious injury, but no actual damages have been sustained or none can be proved." *4041-49 W Maple Condo Ass'n v. Countrywide Home Loans, Inc.*, 282 Mich. App. 452, 460 (2009). Defendants' motion with respect to this argument is **DENIED**.

### v. Jones is entitled to summary judgment on Count II (Breach of Contract, Breach of Jones's Affirmation That Living Essentials Owns the Formula)

Jones argues that he is entitled to summary judgment on Count II, in which Plaintiff alleges that Jones breached § 2 and § 5(e)(i) of the Settlement Agreement by (1) holding himself out on his LinkedIn page as the "inventor and creator of the 2 oz. energy

shot supplement category" and stating that "5-hour ENERGY® was our signature creation in 2004," and (2) stating on his biographical page for Universal Nutrients that he created the formula for, or his action lead to, the creation of 5-hour Energy®. Dkt 328, Pg. ID 15,287 (Jones's argument); Dkt. 187, Pg. ID 6,707 (Count II). Specifically, Jones submits:

- Plaintiff does not say in what way his statements constitute a breach of the Settlement Agreement.
- Section 2 provides that Jones agrees that Plaintiff owns the formula, so nothing he did after signing the Settlement Agreement could constitute a breach of this section.
- Section 5(e)(i) provides that Jones will not state that his product is or was made in the same plant, by the same or affiliated company or people, or on the same equipment that 5-hour Energy® was made.
- His LinkedIn page does refer to CNL (not Jones) as the inventor and creator of the 2 oz. energy shot supplement category, but it indicates that the first energy shot on the market was a product called Shotz.
- His bio on Universal Nutrients' website never says that he is the owner of the Formula.

Dkt 328, Pg. ID 15,287.

Plaintiff responds that § 2 is broader than just the ownership of the 5-hour Energy® formula; it includes the affirmations that "the CNL Parties confirm and agree that [Plaintiff] developed, solely owns and has always solely owned the Formula." Dkt. 334, Pg. ID 18,392. Plaintiff contends that Jones breached both § 2 and § 5.e.i. by making the following statements:

33

- "His formulas combined have generated revenues for his customers of more than $8 billion USD";
- "5 Hour Energy was our signature creation in 2004";
- "[His proposal to Plaintiff] led to the creation of what today is known as 5-Hour Energy®"; and
- "As the pioneer of the 2 oz energy shot category and the original formulator of 5 Hour Energy . . ."

Dkt. 334, Pg. ID 18,392-18,393.

Section 2 of the Settlement Agreement provides:

> **The Development and Ownership of the Formula of 5HE**. The CNL Parties each confirm and agree that LE hired CNL to assist with formulating the Formula for 5HE, and that LE or its assigns solely owns, and has always solely owned, the Formula and derivatives of the Formula, including all versions of the Formula, as well as any and all trade secret and intellectual property rights in and to the Formula. The CNL Parties represent and warrant that with respect to their assistance with formulating the formula, they did not and have not infringed upon any trade secrets or intellectual property of any third party and that they had full and complete rights to provide the assistance that they provided. The Parties have agreed not to issue a joint press release, which was originally intended to be attached as Exhibit B, and therefore the document originally intended to be Exhibit B is intentionally omitted; nevertheless, the CNL Parties confirm and agree that one or more of the LE Parties developed, solely owns and has always solely owned the Formula, which confirmation shall also be reflected in the Order attached as Exhibit A. With respect to products produced by the CNL Parties that could be considered to be derivatives of the Formula because they contain the same or substantially the same combination of ingredients as the Formula, or that would infringe upon the patent, if issued, pursuant to the application for patent filed by one or more of the LE Parties, then Section 5 below applies.

Dkt.332-2, Pg. ID 17,912.

And § 5(e)(i) provides:

> **Other Restrictions on the CNL Parties**. The CNL Parties, individually, collectively, or in concert with others, shall not, and will require all customers going forward by contract to refrain from, stating, disclosing, confirming, representing, or publishing, etc. that their product is or was made in the same plant, by the same or affiliated company or people, or on the same equipment that 5HE was made, or that their formula is similar to, or the same as, 5HE, and any label, labeling, advertising or public or private statement shall not state or imply that it is the same as 5HE or that such competitive product lasts a specific number of hours. The CNL Parties are not responsible for actively policing customers, but must enforce the contractual agreements described in the preceding sentence when notified of such a violation. LE shall be an intended, third-party beneficiary of the provisions of such contractual agreements described in the preceding two sentences.

Dkt. 332-2, Pg. ID 17,916.

Plaintiff's claim is that Jones made statements after the settlement agreement in which he took credit for developing the formula of 5-hour ENERGY®. In considering Defendants' motion for summary judgment on this Count, the Court must decide whether § 2 of the Settlement Agreement contains any restriction that obligates Jones to take or refrain from taking any specific action in the future. As a "CNL Party," Jones agreed as follows: "the CNL Parties confirm and agree that one or more of the LE Parties developed, solely owns and has always solely owned the Formula, which confirmation shall also be reflected in the Order attached as Ex-

hibit A."[10] By this provision, Jones agreed and confirmed that Plaintiff owned and has always owned the formula, and that Plaintiff developed the formula. Yet according to Plaintiff, Jones later made statements inconsistent with this agreement, by claiming that "5 Hour Energy was our signature creation" and he was the "original formulator" of 5-hour ENERGY®. Therefore, the question the Court must decide is: Do these kinds of statements breach any obligation created by § 2?

Section 2 recites an agreement to a certain fact (Plaintiff developed and owns the 5-hour ENERGY® formula), not an agreement to take or refrain from taking any particular action in the future. So this section does not prohibit Jones from making statements inconsistent with the agreement that he made. If Jones were to try to claim any legal rights to the formula, § 2 would bar such a claim. But its terms do not go further and restrict him from making statements—false or misleading though they may be—in the future.[11]

---

[10]   The "Order attached as Exhibit A", a signed copy of which is in the record at Dkt. 331-10, does not impose any obligation on Jones to refrain from making statements in the future about the origins of the formula.

[11]   The Court is not called upon to determine the ethics of Jones's conduct in making public statements that appear to blatantly contradict a recitation that he made and agreed to. One does not need a judge's intervention to see that to do so is wrong. The question here, however, is whether the statements breached Jones's contract with Plaintiff.

Indeed, it is abundantly clear that, had the parties sought to restrict Jones from making future statements about the ownership and creation of the formula, they knew how to craft a provision that imposed such a restriction: § 5(e)(i) contains a similar restriction on future conduct and speech.

In § 5(e)(i), Jones agreed not to state or represent that any product made by a CNL party (including CNL and Jones himself): (1) was made by the same plant that made 5-hour Energy®; (2) was made by the same affiliated company or people that made 5-hour Energy®; (3) was made on the same equipment that 5-hour Energy® was made on; or (4) has the same or similar formula as 5-hour Energy® has. And Plaintiff alleges that Jones breached this provision as well.

The statements that Plaintiff alleges as the basis for its claim, however, are not the kinds of statements Jones agreed to refrain from making. None of Jones's statements reference a specific CNL-party product or CNL-party customer's product, which would be required for a violation of § 5(e)(i) because the section prohibits only statements that "their product" was made in a comparable way to 5-hour Energy®.

Thus no reasonable jury could find that Jones breached § 2 by making the statements at issue because § 2 did not restrain Jones's future conduct. And, without Plaintiff having identified a statement

Jones made where he compared a specific CNL- or Jones-product to 5-hour Energy®, no reasonable jury could find that Jones breached § 5(e)(i). Jones's motion with respect to Count II is therefore **GRANTED**.

### vi. Jones is not entitled to summary judgment on Count III (Breach of Contract, Jones's Cooperation with Adverse Parties)

Jones argues that he is entitled to summary judgment on Count III, which alleges that he breached § 13 of the Settlement Agreement by acting as a witness for NSL and assisting NSL in its defense of this lawsuit, because § 13 is against public policy. Dkt. 328, Pg. ID 15,288. Section 13 provides:

> **Cooperation with Persons or Entities Adverse to the Parties.** Each Party shall refrain from cooperating with anyone adverse to the other party (subject to customary exclusions for a valid subpoena, etc.); each Party shall give notice and the opportunity to challenge any subpoena, etc.

Dkt. 332-3, Pg. ID 17,920.

To support his position, Jones cites cases from across the country, Dkt. 328, Pg. ID 15,288, but provides no controlling authority. And Jones fails to explain how the reasoning employed in any of the cases he cites should apply to this case and persuade the Court to rule in his favor.

Jones also cites the Michigan Rules of Professional Conduct and a Michigan case stating that a lawyer may not ask a potential expert witness to refrain from cooperating with an opposing party, Dkt. 328, Pg. ID 15,289, but offers no explanation of why prohibitions on what an attorney may do should extend to nullify a contractual provision between a number of sophisticated parties, including corporate entities and officers acting pursuant to advice of counsel.

Without controlling authority or a detailed, persuasive explanation of why the Court should apply the law of other non-controlling jurisdictions from other states, the Court will not block Plaintiff from seeking to hold Jones liable for what appears to be a blatant breach of § 13. Jones's motion with respect to Count III is **DENIED**.

### vii. Jones is entitled to summary judgment on Count IV (Other Breaches of Contract by CNL, NSL and Jones)

Jones argues that he is entitled to summary judgment on Count IV because the provision of the Settlement Agreement (§ 8) that Plaintiff alleges Jones violated by failing to disclose information to a third party in fact permits disclosure but does not require it. Dkt. 328, Pg. ID 15,290. Section 8 states:

> **Confidentiality and Non-disparagement**. The mere existence of this Agreement is not confidential. The Parties may indicate that the matter has been settled. The Parties, however, agree not to advertise or issue an an-

nouncement or press release that this matter has set-
tled, and further agree not to disclose the terms or con-
ditions of this Agreement except (a) as may be required
by law, so long as prior to making any such disclosure,
the disclosing Party provides the other Party with
prompt written notice and provides such other Party a
reasonable opportunity to object and/or seek a protective
order; (b) in confidence to the insurers, professional legal
and financial counsel representing such party or to a
bona fide prospective significant investor or acquirer of
such Party (so long as such prospective significant in-
vestor or acquirer is subject to a confidentiality agree-
ment); (c) as agreed by the Parties, including, but not
limited to, the disclosure of any settlement terms in the
Orders set forth in Section 9 or as otherwise called for in
Section 2, 3.d, or 12; (d) to the limited extent necessary
to enforce the terms or conditions of this Agreement; or
(e) those limited provisions is Section 5 above, specifi-
cally only Subsection 5.a to and including Subsection
5(d) but no other portion of Section 5, to the limited ex-
tent necessary for CNL to inform customers or potential
customers of its right to manufacture and sell products
permitted by Subsection 5.a to and including Subsection
5(d), but only if such consumer or potential customer ex-
ecutes and is bound by a valid and enforceable confiden-
tiality agreement restricting such use and disclosure of
the limited purpose described above. The Parties shall
not make any disparaging remarks or statements about
any of the other Parties.

Plaintiff fails to contest this argument. Instead, Plaintiff only

addresses Count IV in a portion of its response that acknowledges

that both Count IV and Count V have been "resolved" by the Court's

decision that "the APA incorporates the SA only in part." Dkt. 334,

Pg. ID 18,395. As Plaintiff does not contest Jones's motion for sum-

mary judgment on Count IV, his motion is **GRANTED**. See, e.g.,

*Jackson v. Fed Express*, 766 F. 3d 189, 195-96, 198 (2nd Cir. 2014)

(noting that "a partial response arguing that summary judgment

should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims").

### viii. Defendants are entitled to summary judgment on Count V (Breach of Contract by NSL and Jones)

Defendants argue that they are entitled to judgment on Count V because the Court has already ruled that NSL is not bound to the contractual provision (§ 5(e)(1)) that Plaintiff argues NSL breached by referring to 5-hour Energy® on the labels of some of its energy shots. Dkt. 328, Pg. ID 15,291.

Plaintiff concedes that the Court's decision that NSL is bound only to § 5(c) resolves this claim against NSL. Dkt. 334, Pg. ID 18,394. But Plaintiff argues that Jones breached § 5(e)(i) by representing that NSL products were made by the same people— Jones himself—who made 5-hour Energy®. Dkt. 334, Pg. ID 18,393.

NSL is entitled to summary judgment based on Plaintiff's concession. And Jones is entitled to summary judgment because, although Plaintiff labeled Count V "Breach of Contract by NSL and Jones," Plaintiff neglected to allege within the Count that Jones breached § 5(e)(1)—or, for that matter, any other specific provision of the Settlement Agreement. See Dkt. 187, Pg. IDs 6,710-6,711. Indeed, in Count II Plaintiff alleges that Jones breached § 5(e)(1), see Dkt. 187, Pg. IDs 6,707-6,708, and, as noted above, Jones is en-

titled to summary judgment on that claim. So Count V is duplicative as to Jones, and he is entitled to summary judgment on it. Defendants' motion with respect to Count V is therefore **GRANTED**.

### ix. NSL is entitled to summary judgment on Count VII (Tortious Interference with contract by NSL)

NSL argues that Plaintiff's allegation of interference with the contract stems from NLS's purchase of CNL's assets, and that the purchase was a legitimate business transaction that the Court has already reviewed and found contains no indicia of fraud. Dkt. 328, Pg. ID 15,292. NSL also argues that Plaintiff fails to articulate how the Asset Purchase Agreement constitutes a breach of the Settlement Agreement. Dkt. 328, Pg. ID 15,292.

Plaintiff responds that, because the Court ruled that NSL was not a party to the entire settlement agreement, Plaintiff may argue that NSL interfered with portions of the Settlement Agreement to which NSL is not bound. Dkt. 334, Pg. ID 18,395. Specifically, Plaintiff identifies §§ 5.e.i., 2, 13, and 15 as provisions of the Settlement Agreement with which NSL could have tortiously interfered, Dkt. 334, Pg. ID 18,396, and concludes that Count VII is still alive with respect to non-§ 5(c)(i) breaches. Dkt. 334, Pg. ID 18,396.

NSL is entitled to summary judgment on this claim. Plaintiff is correct that it could have argued that NSL interfered with the contract between Plaintiff and Jones and CNL by inducing Jones and

CNL to breach contractual provisions outside of § 5(c). But Plaintiff has limited its claim to § 5(c)(i) conduct. Indeed, Plaintiff's only allegation in Count VII of its Second Amended Complaint is that NSL interfered with the contract when it "***induced CNL and Jones*** to sell CNL's assets and liabilities to NSL and, as a result, ***to breach the Agreement by assisting NSL to*** individually, collectively, or in concert with one or more of them, directly or indirectly, ***Produce Energy Liquids that contain the Prohibited Ingredients***." Dkt. 187, Pg. ID 6,713 (emphasis added). So the only way that Plaintiff alleges that NSL interfered with the contract is by causing CNL and Jones to breach § 5(c)(i). But NSL is bound by § 5(c)(i). NSL "cannot tortiously interfere with its own contract" *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 396 (E.D. Mich. 2000), so it is entitled to summary judgment on this claim. NSL's motion with respect to Count VII is therefore **GRANTED**.

### x. NSL is entitled to summary judgment on Count VIII (tortious interference with a business expectancy by NSL)

NSL argues that Count VIII is moot because the Court has already determined that a valid contract (as reformed by the Court) existed between Plaintiff, Jones, and CNL. Dkt. 328, Pg. ID 15,293.

Plaintiff responds that Count VIII is an alternative Count it has brought in the event that the Court rules that a provision of the Settlement Agreement is void. Dkt. 334, Pg. ID 18,398.

43

NSL is entitled to summary judgment on Count VIII. As noted above, NSL's duress defense fails as a matter of law, and NSL's "illegal restraint on trade" defense is moot. So there is no basis on which NSL could seek to invalidate the Settlement Agreement, meaning Plaintiff will never find itself in the alternative scenario for which it brought the claim. NSL's motion with respect to Count VIII is therefore **GRANTED**.

### xi. NSL has not established as a matter of law that Plaintiff may not recover attorneys' fees from it

NSL argues that under Michigan law, the winning party in a lawsuit generally may not recover attorneys' fees from the losing party. Dkt. 328, Pg. ID 15,297 (citing *Haliw v. City of Sterling Heights*, 471 Mich. 700, 707 (Mich. 2005)). An exception, NSL notes, is when the parties to a contract expressly provide for the payment of fees in litigation. Dkt. 328, Pg. ID 15,297 (citing *Pransky v. Falcon Group, Inc.*, 311 Mich. App. 164, 193-94 (Mich. Ct. App. 2015)). NSL submits that § 20 of the Settlement Agreement provides for attorneys' fees, but that the Court has already ruled that NSL is bound only to § 5(c). Dkt. 328, Pg. ID 15,297. Thus, NSL contends, it is entitled to judgment on Plaintiff's claim for attorneys' fees. Dkt. 328, Pg. ID 15,297.

Plaintiff responds that it may recover its attorneys' fees from NSL under § 5(d) of the settlement agreement, and also as discovery sanctions. Dkt. 334, Pg. ID 18,400.

NSL's argument fails. To be sure, as noted above, NSL is not bound to § 5(d), and Plaintiff has not brought a claim against NSL for breach of § 5(d), so NSL and is not subject to an attorneys'-fee award based on that provision of the Settlement Agreement. And NSL is not bound to any other portion of the Settlement Agreement that requires the losing party in a lawsuit to pay the winning party's attorneys' fees. But there are other ways that Plaintiff may recover the fees—ways independent of the Settlement Agreement. For example, Plaintiff may recover its attorneys' fees, or at least portions of those fees, under Federal Rules of Civil Procedure 11 and 37. Therefore Defendant is not entitled to a ruling that, as a matter of law, Plaintiff may not recover any attorneys' fees from NSL. If Plaintiff believes it has a basis to recover attorneys' fees on grounds unrelated to the Settlement Agreement, Plaintiff may at the appropriate time request leave to file a motion to recover its fees. NSL's motion with regard to this argument is **DENIED**.

## V.   Conclusion

For the foregoing reasons, both motions are **GRANTED IN PART** and **DENIED IN PART**.

Specifically, Plaintiff's motion is:

- **DENIED** with respect to its argument that it is entitled to summary judgment on Defendants' patent-disclosure counterclaims;

- **DENIED** with respect to its argument that it is entitled to summary judgment on Count I;

- **DENIED** with respect to its argument that Defendants' breaches of § 5(c)(i) tolled the duration of the restrictive covenant; and

- **GRANTED** with respect to its argument that Defendants' purported duress defense fails as a matter of law.

And Defendants' motion is:

- **GRANTED** with respect to their argument that the damages period ends no later than October 14, 2012;

- **GRANTED** with respect to their argument that Plaintiff may not secure injunctive relief;

- **DENIED** with respect to their argument that the Settlement Agreement is an illegal restraint on trade;

- **GRANTED** with respect to their argument that Plaintiff may not prove lost profits using a market-share calculation;

- **GRANTED** with respect to their argument that Plaintiff may not recover a reasonable royalty;

- **GRANTED** with respect to their argument that Plaintiff may not recover disgorgement of Defendants' proceeds;

- **DENIED** with respect to their argument that they are entitled to summary judgment on Counts II-V, VII, and VIII on the grounds that Plaintiff has produced no evidence of damages for those claims;

- **GRANTED** with respect to Jones's argument that he is entitled to summary judgment on Count II;
- **DENIED** with respect to Jones's argument that he is entitled to summary judgment on Count III;
- **GRANTED** with respect to Jones's argument that he is entitled to summary judgment on Count IV;
- **GRANTED** with respect to their argument that they are entitled to summary judgment on Count V;
- **GRANTED** with respect to NSL's argument that it is entitled to summary judgment on Count VII;
- **GRANTED** with respect to NSL's argument that it is entitled to summary judgment on Count VIII; and
- **DENIED** with respect to NSL's argument that Plaintiff may not recover attorneys' fees from it.

Judgment is entered in Jones's favor on Counts II, IV, and V, and in NSL's favor on Count V, VII, and VIII.

**SO ORDERED.**

Dated: June 12, 2017     s/Terrence G. Berg
                         TERRENCE G. BERG
                         UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on June 12, 2017.

                         s/A. Chubb
                         Case Manager